**GOTHAM PARTNERS, L.P., a New York Limited Partnership, Plaintiff,**

**v.**

**HALLWOOD REALTY PARTNERS, L.P., a Delaware Limited Partnership, and Hallwood Realty Corporation, a Delaware Corporation, Defendants.**

**No. 15578 NC.**

Court of Chancery of Delaware, New Castle County.

Submitted: Feb. 6, 1998.
Decided: April 29, 1998.

Lewis H. Lazarus and Michael A. Weidinger, of Morris, James, Hitchens & Williams, Wilmington; Philip Schaeffer and Dwight Healy of White & Case, New York City, of counsel, for Plaintiff.

Michael D. Goldman, Stephen C. Norman, and Eileen M. Filliben of Potter Anderson & Corroon, Wilmington; William J. McSherry of Battle Fowler, L.L.P., New York City, of counsel, for Defendants.

## OPINION

STEELE, Vice Chancellor.

This is the Court's Opinion on plaintiff's motion to amend and supplement its complaint. Plaintiff Gotham Partners, L.P. ("Gotham"), is a limited partner in defendant, Hallwood Realty Partners ("Hallwood"). Gotham filed this § 17–305 action to gain access to Hallwood's books and records. *See* 6 Del.C. § 17–305. Section 17–305 grants a limited partner the right to seek access to the partnership's books and records in a summary proceeding analogous to a § 220 hearing allowed a shareholder in a Delaware corporation. *See* Del.C. § 220.

Plaintiff argues that this action should be amended to include claims of fiduciary and contractual breach of duty. Plaintiff seeks to tack those claims to this action's early filing date as a presumptive rebuttal to any defense of laches that defendants may raise. Plaintiff's tactical procedural proposal would deny defendants that opportunity, but fails to justify a departure from § 220 precedent, which scrupulously protects this limited, ex-

pedited proceeding from expansion into a plenary trial. Motion *denied*.

## I. Background & Parties' Contentions

Hallwood has engaged in a series of transactions involving its own limited partnership units. The first transaction was a "Unit Adoption Plan," approved on February 27, 1995, that granted three officers [1] of defendant Hallwood Realty Corporation, Hallwood's general partner (the "General Partner"), options to purchase 78,100 units (4.7% of the units outstanding) in Hallwood at $11.85 per unit.

Then, on March 3, 1995, the General Partner caused Hallwood to execute a one-for-five "Reverse Split" in which the outstanding units were reduced from 8,662,298 to 1,732,459. This transaction created 30,000 fractional units as well as an unknown amount of odd lot holdings. [2] Hallwood purchased the purported 30,000 units worth of fractional shares from the unit holders at $11.88 per unit and then sold the shares to the General Partner at the same price. The fractional share transaction resulted in the General Partner owning 119,269 (6.88%) of the outstanding shares. Next, Hallwood commenced a self-tender for odd lot holdings, ostensibly to reduce the administrative cost of servicing odd lot unit holders. The self-tender resulted in Hallwood buying 293,539 units (almost 18%) at prices ranging from $11.85 to $14.93 per unit with an average price of $14 per unit.

Finally, in December 1995, Hallwood announced a unit repurchase for up to 175,000 units, executed through open market or private transactions. Hallwood repurchased approximately 74,760 units at an average price of $23.75 per unit. According to the Proposed Amended Complaint, the repurchase reduced the number of outstanding shares to 1,673,005 and pushed the General Partnership's percentage of ownership from 23.8% to 24.6%. [3] Gotham adds the General Partner's block to the options granted to the General Partner's officers, and concludes that the General Partner controls nearly 30% of the outstanding units. Under the partnership agreement, 66.6% of the limited partner units must vote in favor of termination to terminate the General Partner; therefore, Gotham alleges that the General Partner has seized *de facto* control over the partnership by effectively precluding the public unit holders from voting the General Partner out.

These transactions, and their alleged implications, aroused Gotham's suspicions. On January 24, 1997 (approximately 2 years after the unit repurchase), Gotham sent Hallwood a letter demanding access to Hallwood's books and records. Hallwood responded that the letter "appears to be vague and improper." [4] Dissatisfied with Hallwood's response, Gotham filed this action on February 27, 1997. Gotham alleges that defendants responded by engaging in dilatory tactics designed to frustrate this action. After Gotham moved to amend its complaint and on the eve of trial, defendants granted Gotham access to Hallwood's books. That production would appear to moot this action, but the production took place in accord with a stipulation within which the parties agreed that Gotham could pursue its motion to amend.

Based on information obtained from discovery and from its own inquiries, Gotham now believes that the above-described transactions allowed the General Partner to purchase partnership units at an unfair price, dilute the outside unit holders, and entrench

---

1. Anthony Gumbiner, Brian Troup, and William Guzzetti were officers of the General Partner, Hallwood Realty Corp., and its parent, Hallwood Group Incorporated.

2. Pl.'s Proposed Am. and Supp. Comp. ¶ 39. Because the plaintiff's Opening Brief cites to relevant portions of the proposed amended complaint, I refer to those sections to provide some background information fleshing out the facts pertaining to the claims Gotham seeks to add. I am not evaluating the substance of plaintiff's new claims, and the information taken from the proposed amended complaint does not impact upon the conclusions reached herein. An example of a fractional unit would be a unit holder with 3 units who after the reverse split owned a 3/5 unit. Odd lots are holdings of less than 100 units.

3. Pl.'s Proposed Am. and Supp. Comp. ¶ 74.

4. William L. Guzzetti, letter of Feb. 4, 1997 to William A. Ackman.

itself. Gotham filed a derivative action with this Court on behalf of Hallwood on June 20, 1997, claiming that these actions breached the General Partner's fiduciary and contractual duties to Hallwood. Gotham makes essentially the same claims (on its own behalf and derivatively) in the amendments that it now seeks to add to this 17–305 complaint. If allowed to amend, Gotham intends to consolidate the two suits.

Gotham argues that the Court should allow the amendments for two reasons. First, Gotham argues that the Court generally permits plaintiffs to amend their complaints and that this liberal approach suggests the Court should permit the amendments Gotham proposes here. Furthermore, Gotham argues that defendants purposefully held up discovery in this action to delay Gotham's pursuit of its claims. Gotham alleges that defendants now plan to raise a defense of laches against Gotham's derivative claims. Gotham asks the Court to discourage that defense by allowing Gotham to amend this action (filed 4 months before the derivative suit), so that Gotham can avail itself of this action's earlier filing date and any protections that the earlier filing date will bring.

Defendants oppose the motion to amend on both grounds. First, they point to case law dealing with proposed amendments to § 220 hearings, the corporate analogue to this action. This Court has consistently refused to expand the narrow and expedited hearing granted to a plaintiff under § 220 into a plenary trial of breach of fiduciary duty or breach of contract claims.[5] Defendants argue that the same reasoning supporting that result applies in the limited partnership context. Next, defendants attack Gotham's suggestion that the amendment should be granted to preempt any attempt by defendants to raise a potentially meritorious laches defense. Defendants state that the four-month period between the filing of this § 17–305 action and the derivative suit is inconsequen-

tial. They also query why the Court would prevent them from raising a laches defense, if such a defense is meritorious. They respond to Gotham's allegations that defendants stonewalled Gotham with the purpose of raising a laches defense by pointing out that Gotham may raise equitable tolling or fraudulent concealment to defeat a defense of laches, if defendants had wrongfully denied Gotham access to the information upon which Gotham makes its allegations. Thus, defendants conclude that no reason exists to manipulate procedure in this dispute to preempt them from raising a legitimate defense.

## II. Rulings of Law

This Court must decide a question of first impression: Should the Court allow a plaintiff to amend the complaint to add a breach of fiduciary duty or a breach of contract claim to a request to inspect the books sought under 6 DEL. C. § 17–305? In answering this question, I separate the analysis into two parts. First, I examine whether, as a general rule, amendments to a § 17–305 special hearing should be granted liberally. I decide they should not. Next, I look at plaintiff's claim that it would be unfairly prejudiced if its requested motion to amend its complaint is denied. I conclude that plaintiff's untoward fear of the spectre of a laches defense does not constitute circumstances for which a special exception to the general rule restricting the scope of this proceeding should be created.

### A. Amendments to a § 17–305 action as a General Rule

The limited partnership is a hybrid entity. It grafts the limited partner, a passive investor similar to a corporate shareholder, onto a general partnership.[6] In interpreting the statutory provisions for forming limited partnerships, the Court has turned to both corpo-

---

**5.** *See, infra,* notes 35 & 36 and accompanying text.

**6.** Among other reasons, the limited partnership attracts promoters and investors because it combines passive investment, which protects investors from the entity's liabilities and is conducive

to capital formation, with the favorable tax treatment of a partnership. *See* Alan Bickerstaff, *The Limited Partnership Rollup Reform Act of 1993: Necessary Protection for Limited Partners or Overreaction to the Rollup Phenomena?*, 32 BULL. BUS. L. SEC. ST. B. TEX. 5, 6–13 (March 1995).

rate and general partnership law.[7] In this case, the Court is asked for the first time to decide the scope of a plaintiff's right to amend a complaint in a § 17–305 action. This inquiry requires that I first determine the area of law from which the disputed summary hearing process was derived and whether that source and case law interpreting it are relevant to the issue before the Court.[8] In infrequent circumstances, a dispute within a limited partnership may exhibit an entirely novel characteristic of the limited partnership. In that situation, the Court will likely find no specific doctrine to import into the limited partnership context, but must rely on general principles of fairness and equity to interpret the disputed limited partnership statute.[9]

### 1. Establishing precedent: partnership versus corporate law

Both Delaware's corporation law and partnership law contain statutes bearing similarities to § 17–305. Section 1519 of the Uniform Partnership Law provides that every partner of a general partnership shall at all times have access to and may inspect the partnership books.[10] Section 1519 provides an absolute right to a partner to inspect the books, but provides no special hearing to facilitate a partner's demand to do so. Section 220 of the General Corporation Law

contains the corporate parallel to § 1519.[11] That section grants a person the right to demand access to a Delaware corporation's books, records, and stock ledger, if the person is a stockholder of record who makes written demand to the corporation describing a proper purpose reasonably related to the person's interest as a stockholder in the corporation.[12] If the corporation fails to respond to a shareholder's demand letter within five days, the shareholder may file an action in this Court. Section 220 vests exclusive jurisdiction with this Court to conduct a hearing to decide whether the shareholder is entitled to inspect the books and, if so, to summarily order the corporation to produce the books for inspection.

Section 220 differs from the partnership statute in two important respects. First, the shareholder's right to inspect is conditioned upon a showing of (1) a reasonable relationship between the information sought and the shareholder's interest in the corporation; and (2) the making of proper written demand.[13] Second, the statute provides for a special hearing at which the Court determines whether the above two conditions are met.[14]

The question of which statute § 17–305 resembles is easily answered. Section 17–305 uses language much closer to and grants conditional rights much similar to those

---

**7.** *See, e.g., Schwartzberg v. CRITEF Assoc. L.P.,* Del. Ch., 685 A.2d 365 (1996) (turning to partnership and corporate law to resolve limited partnership dispute). I use the term "general partnership" to distinguish that entity from the limited partnership. The term is a retronym, "a phrase with a modifier fixing a meaning to a noun that needed no modifier before." Before the spread of the limited partnership, partnerships were presumed to be general partnerships, and the use of the modifier "general" would have been superfluous. *See* William Safire, *Retronym Watch, On Language,* NEW YORK TIMES MAGAZINE (March 22, 1998).

**8.** It is worth noting that the case here requires me to construe a limited partnership statute. That process is different from dealing with a dispute for which no limited partnership statute applies. The latter type of dispute must be resolved in accord with 6 DEL. C. § 17–1105, which directs the Court to apply Uniform Partnership Law, and if that law does not apply, to rely on the "rules of law and equity, including the Law Merchant."

**9.** In certain instances, interpretation by sister courts of an analogous provision of a sister state's Revised Uniform Limited Partnership Law would be an additional source to consider.

**10.** 6 DEL. C. § 1519.

**11.** 8 DEL. C. § 220.

**12.** The issue of whether a stockholder is a holder of record is a technical issue specific to corporate stock that is not relevant to this analysis.

**13.** *U.S. Die Casting & Dev. Co. v. Security First Corp.,* Del. Ch., 711 A.2d 1220, 1224, Steele, V.C. (1996) ("Stockholders of record have the statutory right to inspect the stocklist and books and records of a corporation for a proper purpose.... A plaintiff must make a written demand under oath stating a proper purpose ....").

**14.** 8 DEL. C. § 220(d).

granted by § 220. Under § 17–305, a limited partner may demand that the limited partnership provide access to the books, records, and a list of partners, but the demand must be written and must state a reason for seeking access that is reasonably related to the limited partner's interest in the limited partnership.[15] Section 17–305 provides the Court of Chancery with exclusive jurisdiction to hold a hearing in which, upon a proper showing of reasonable relation and proper demand, this Court may order the limited partnership to provide the limited partner with the requested information.[16]

The legislative history of § 17–305, though scant, reinforces what the statute's language suggests—that the current § 17–305 is patterned after § 220. Section 1710 of the old 1953 Limited Partnerships Act[17] granted the limited partner the same unqualified right to inspect and copy the partnership books as a partner in a general partnership.[18] In 1983 the General Assembly replaced that act by adopting the Delaware Revised Uniform Limited Partnership Act ("DRULPA"), a modified version of the 1976 Revised Uniform Limited Partnership Act ("RULPA").[19] The original 1983 version of DRULPA contained the first appearance of Section 17–305, which—though it deviated from the language found in RULPA § 305[20] and from old § 1710—granted a limited partner in most respects the same broad right to inspect the books.[21] Real change did not come until 1985, when Delaware broke ranks with its sister RULPA states and expressly qualified the limited partner's right to inspection[22] by requiring that the limited partner's demand be "reasonably related" to the limited partner's interest in the limited partnership.[23] In 1988, § 17–305 was again substantially modified. This time, the General Assembly added, among other things, the requirement that a limited partner's demand be written. The 1988 amendment also gave this Court exclusive jurisdiction to enforce any right arising under § 17–305.[24]

The 1985 and 1987 amendments moved Delaware away from general partnership law and RULPA models by restricting the limited partner's right to inspect the books in the same ways that a shareholder's access is

---

**15.** Chancellor Allen described the conditions to inspection as follows:

> [The] limited partner's right to inspect books and records and to otherwise access information regarding the partnership is limited to 'purpose[s] reasonably related to the limited partner's interest as a limited partner.' The limited partner must make demand in writing and set forth the purpose of such demand. *Schwartzberg*, 685 A.2d at 375, n. 14.

**16.** 6 Del. C. § 17–305(e).

**17.** 6 Del. C. §§ 1701–1733 *superseded by* Delaware Revised Uniform Limited Partnership Act, 6 Del. C. §§ 17–101 to –1111; *see* 6 Del C. §§ 1104, –1106.

**18.** 6 Del. C. § 1710 (repealed) ("A limited partner shall have the same rights as a general partner to: (1) At all times inspect and copy any of the partnership books."). The old 1953 statutes continue to govern limited partnerships created before July 1, 1973, but are no longer used to form new limited partnerships. 6 Del. C. §§ 17–1104, –1106.

**19.** *See Synopsis, An Act to Amend Title 6 of the Delaware Code*, H.B. No. 191, Del. Bills & Resolutions 1985–86 (133d Gen.Ass., Apr. 30, 1984) (passed as amended at 65 Del. Laws, c. 188) [hereinafter *Synopsis*].

**20.** "Each limited partner has the right to: (1) inspect and copy any of the partnership records ...." RULPA § 305 (1976).

**21.** *Cf.* 6 Del. C. § 1710 *with* RULPA § 305 *and* 59 Del. Laws, c. 105, § 17–305 (since amended).

**22.** Courts in other states have ruled that inspection may be denied where the limited partner's purpose is demonstrably improper, but that implied rule is not quite as restrictive as a blanket requirement that the limited partner show a "proper purpose." *See Sanderson v. Cooke*, N.Y. Ct.App., 256 N.Y. 73, 175 N.E. 518, 520 (1931) (concluding that the right of inspection may be refused where purpose is improper); *see also Schwartzberg*, 685 A.2d at 373–74 & nn. 14–15 (Del. Ch.1996) (applying statutory requirement of proper purpose for limited partner's demand and also implying improper purpose rule as to general partner's demand).

**23.** 65 Del. Laws, c. 188, § 17–305 (133d Gen.Ass., 1985). The 1985 Act deleted the entire limited partnership act and re-adopted it in its entirety with the 1985 changes. *Synopsis.* To examine the changes made to § 17–305, see Martin L. Lubaroff & Paul M. Altman, Delaware Limited Partnerships, *History of the Act* at H–50 (1995).

**24.** 66 Del. Laws, c. 188, § 35 (134th Gen.Ass., 1988) (amending § 17–305).

limited.[25] Although the legislative history never references the Delaware General Corporation Law, the substantive impact of the changes made was to inject a special proceeding equivalent to § 220 into the limited partnership's statutory scheme.[26]

Because the legislative history never expressly acknowledges the Delaware General Corporation Law as its model for § 17–305, I cannot rest my conclusion that § 220 case law should serve as precedent for § 17–305 entirely on the legislative history. Nonetheless, the changes made to § 17–305 unequivocally demonstrate that the General Assembly adopted a limited inspection right for limited partners that rejects the general partnership and RULPA models. Therefore, I deftly conclude the obvious: Corporate law is the only logical source for that change. Section 17–305, in fact, uses language strikingly similar to § 220 and grants this Court exclusive jurisdiction to examine the same two narrow issues: whether the demand is reasonably related to the passive investor's interest in the entity and whether the limited partner made proper demand.[27] Even if this substantive overlap does not conclusively establish that the General Assembly intended this Court to apply § 220 precedent to § 17–305, I can conclude from the statutes' overlap that § 220 case law embodies the most logical and meaningful source from which to seek precedent relevant to this dispute.[28]

Both § 220 and § 17–305 grant a right of inspection that are in keeping with the passive role generally envisioned in the statutory provisions pertaining to limited partners and corporate shareholders. Generally speaking, both investors are expected to entrust a centralized management with the use of their funds and to involve themselves in management only when carefully prescribed institutional actions require their approval. However, to exercise even those limited functions and to protect their financial stake in the entity, passive investors need to inform themselves about their investment's performance.[29]

The purpose of an inspection statute is to enforce the right of a passive investor to obtain information on the investment's performance from a putatively uncooperative manager.[30] In cases where a fiduciary abuses its duties to the entity and then hides its misdeeds from the passive investors by imposing an information blackout, the right to seek court-ordered access to the books and records may be the passive investor's only recourse.[31] Because I find that both statutes authorize the court to intervene when the passive investor may be denied specifically qualified opportunities to be better informed about the investment, I conclude that § 220 case law offers precedent relevant to interpreting § 17–305.[32]

25. Cf. 6 Del. C. § 17–305 with 8 Del. C. § 220.

26. See In re Paine Webber L.P.s, Del. Ch., C.A. No. 15043, mem. op. at 9, Jacobs, V.C., 1996 WL 535403 (Sept. 17, 1996) (relying on § 220 precedent to resolve § 17–305 issue of whether limited partner can demand limited partner lists in order to sell them to third party contemplating hostile tender offer).

27. The requirement that a shareholder be a shareholder of record is missing, but that is really a technical aspect of the requirement that a person be a shareholder of the corporation in order to invoke § 220. In that larger sense, the statutes are the same in that a person must also be a limited partner to invoke § 17–305.

28. In re Paine Webber L.P.s, supra note 26, mem. op. at 9, 1996 WL 535403 (citing § 220 cases to resolve § 17–305 issue).

29. Thomas & Betts Corp. v. Leviton Mfg. Co., 685 A.2d 702, 713 (Del.Ch.1995) (enforcing the minority shareholder's "legitimate need to inspect

the corporation's books and records to value their investment, in order to decide whether to buy additional shares, sell their shares, or take some other action to protect their investment").

30. Id.

31. Cf. U.S. Die Casting & Dev. Co. v. Security First Corp., Del. Ch., 711 A.2d 1220, Steele, V.C. (1996) (granting shareholders request to inspect books and lists to determine whether management engaged in wrongful transactions and to communicate such investigations to other shareholders) with In re Paine Webber L.P.s, Del. Ch., C.A. No. 15043, mem. op., Jacobs, V.C., 1996 WL 535403 (Sept. 17, 1996) (denying limited partner access to list of limited partners where limited partner intended to sell list to third party acquirer).

32. See Seaford Fund'g L.P. v. M & M Assoc. II, L.P., Del. Ch., 672 A.2d 66, 70 (1995) (finding that statutory provisions for derivative suit and disputed issues in limited partnership action

Thus, the remaining question (already half-answered) amounts to whether the case law interpreting § 220 is relevant to the limited partnership context before this Court. In this action, Gotham sought information to determine whether the Hallwood options, reverse-split, and self-tender were wrongful: That purpose for seeking the records of Hallwood is a purpose for which shareholders might seek (and have sought) access to a corporation's records. Therefore, in deciding whether Hallwood should be allowed to expand that request in this § 17–305 action by adding breach of fiduciary duty and breach of contract claims, it is proper that this court look to § 220 case law as precedent.[33] This is not a situation where the Court confronts a feature novel to the limited partnership. Instead, a limited partner seeks to expand the statutory proceeding granted under § 17–305 to add breach of fiduciary duty and breach of contract claims just as corporate shareholders have attempted to do in past § 220 actions.

## 2. *Applying corporate precedent*

To return to the parties' contentions in this case, Gotham argues that this Court favors liberal amendment (including supplement) to complaints. It points to Court of Chancery Rule 15(a), which directs that leave to amend a pleading "shall be freely given when justice so requires." And, Gotham cites numerous cases in which this Court has exercised its discretion in favor of amendment.[31] I agree with Gotham's assertion that this Court freely allows amendment in all but the most limited circumstances. For the reasons given below, however, I find this case falls within the ambit of those very limited circumstances.

The § 220 cases cited by defendants persuade me that the limited nature of this action would be ill served by expanding it into a full-blown trial. "The scope and purpose of a Section 220 proceeding is narrow."[35] Time and time again, this Court has rejected claims that would expand a statutory hearing beyond its statutory purpose.[36] Section 220 allows for the prompt adjudication of a claim that the corporation has withheld information reasonably related (and often critical) to a shareholder's interest in the company. Courts have construed § 220 as mandating an expedited and, sometimes, summary adjudication to preserve the orderly and proper governance of the corporation.[37] The litigation (and discovery) is restricted to three basic issues: (i) whether the shareholder made proper demand for the information to the corporation; (ii) (though not significant here) whether the shareholder is a shareholder of record; and (iii) whether the information sought is reasonably related to the interests of the plaintiff in his or her capacity as a shareholder of the corpora-

were similar to statute and issues found in corporate law and, therefore, applying *Aronson* test for demand refused derivative claim).

**33.** *Id.*

**34.** *E.g., Mullen v. Alarmguard of Delmarva, Inc.,* Del.Supr., 625 A.2d 258, 263 (1993) (interpreting Superior Court Civil Rule 15(a), the equivalent to our Rule 15(a), as favoring liberal amendment); *Seaford Fund'g L.P. v. M & M Assoc. II, L.P.,* Del. Ch., C.A. No. 1598-S, letter op. at 3, Steele, V.C., 1996 WL 255886 (Apr. 9, 1996) ("Motions to amend are freely and liberally granted under all but the most limited circumstances.").

**35.** *U.S. Die Casting & Dev. Co. v. Security First Corp.,* Del. Ch., 711 A.2d 1220, 1224, Steele, V.C. (1996).

**36.** *E.g., Fleer v. Frank H. Fleer Corp.,* Del. Ch., 125 A. 411, 416 (1924) (holding that matters collateral to whether valid meeting was held

should not be considered in statutory proceeding (now codified as 8 DEL. C. § 211) unless relevant to meeting's validity); *Bossier v. Connell,* Del. Ch., C.A. No. 8624, letter op. at 5, Hartnett, V.C., 1986 WL 11534 (Oct. 7, 1986) (holding that in dispute over validity of director elections "a proceeding brought pursuant to 8 *Del. C.* § 225 is a summary proceeding and this Court has consistently limited trials pursuant to it to narrow issues") (brackets in original); *In re Data Processing Cnslts., Ltd.,* Del. Ch., C.A. No. 8907, mem. op. at 15, Allen, C., 1987 WL 25360 (Nov. 25, 1987) (holding "claims of breach of fiduciary duty in general will not be entertained by the Court of Chancery in the context of a Section 273 proceeding" to dissolve a deadlocked corporation).

**37.** *Coit v. American Century Corp.,* Del. Ch., C.A. No. 8740, mem. op. at 1–2, 13 DEL. J. CORP. L. 247, 250–51, Jacobs, V.C., 1987 WL 8458 (Mar. 20, 1987) (describing § 220 hearing as combining expedited discovery and an expedited hearing with an inquiry narrow in scope and purpose).

tion.[38] This Court has consistently rejected the injection into a § 220 proceeding of collateral issues not necessary to adjudicate those three issues.[39] The Court's refusal to allow amendment of a § 220 complaint to add additional issues establishes a general rule that I now apply to this § 17–305 action.

### 3. General rule: no fiduciary or contractual claim amendments

■ Section 17–305 provides for a statutory hearing that allows a limited partner to seek judicial intervention where a limited partnership fails to produce books and records in response to a demand for inspection in which the limited partner has stated a proper purpose.[40] That hearing protects the orderly and fair governance of a limited partnership by ensuring that a limited partner can stay abreast of the limited partnership's financial and general partner's fiduciary performance.[41] The discrete inquiry into proper demand and proper reason results in a narrow and focused proceeding. To allow the limited partner to add complex claims of fiduciary or contractual breach of duty would expand the proceeding into a plenary trial and overwhelm the purpose of the special proceeding granted under § 17–305. Thus, as a general rule, this Court will not entertain outside claims or collateral issues within a § 17–305 hearing, but will hear only those matters that pertain to the limited partner's demand to inspect the books.

### B. Special Exception to Rule Against Amendments

■ Having established the rule that § 17–305 pleadings may not be amended to add collateral claims or extraneous issues, I must now entertain Gotham's argument that the threat of defendants raising the defense of laches merits a special exception to the general rule. The rule against amending a § 17–305 complaint rests not upon the express language of the statute, of course, but upon the common law. In certain circumstances such as those involving the wrongdoing of a fiduciary,[42] this Court may refrain from lock-step application of a legal rule that would result in an injustice and invoke its equitable powers to ensure that the dispute is resolved in a fair and just manner.[43] The question here, then, is whether Gotham has described circumstances in which application of the rule against amendment would unfairly prejudice its claims against defendants. I conclude that Gotham has not.

■ The defense of laches normally requires a showing by a defendant that (a) plaintiff knew (or should have known) of its rights or claim; (b) plaintiff failed to assert its rights or claim; and (c) defendant has materially changed its position or otherwise materially relied on plaintiff's failure to assert.[44] The plaintiff can defeat the defense

---

**38.** U.S. Die Casting & Dev., supra, 711 A.2d 1220, 1224 note 35, (holding that shareholder of record has statutory right to inspect the books if shareholder makes written demand under oath stating a proper purpose and limiting the shareholder's right to inspect to documents reasonably necessary to address the properly avowed purpose).

**39.** Coit, supra note 37, mem. op. at 2, 13 DEL J. CORP. L. at 251 ("To permit a party unduly or improperly to expand a § 220 proceeding beyond its intended scope, either by pleading legally insufficient defenses or by other means, would also undercut and possibly defeat the statutory purpose.").

**40.** Schwartzberg, 685 A.2d at 375, n. 14.

**41.** Because Gotham concedes that Hallwood complied with the demands made in Gotham's original § 17–305 complaint, I need not consider whether any of the supplemental fiduciary or contract claims relate to the original § 17–305

issues such that they might be properly tried as part of the statutory proceeding.

**42.** Kahn v. Seaboard Corp., Del. Ch., 625 A.2d 269, 275 (1993) (holding that "[s]ince trust and good faith are the essence of [the fiduciary] relationship, it would be ... contradictory for the law to punish reasonable reliance on that good faith by applying the statute of limitations woodenly").

**43.** See, e.g., Bovay v. H.M. Byllesby & Co., Del. Supr., 38 A.2d 808, 814 (1944) (holding that for claims of fiduciary breach "the statute of limitations will not necessarily apply, although the remedies at law and in equity are concurrent; and equity will refuse to adopt a rule of limitations where injustice would result.").

**44.** Elster v. American Airlines, Inc., Del. Ch., 128 A.2d 801, 805 (holding that "a person with knowledge of an impending transaction should not be permitted to sit by in silence while posi-

by showing any one of these elements is missing. For example, Gotham could show that it did not know of the rights and claims until after the production of books and records in this action, and that defendants had hid the relevant facts from Gotham. Gotham could also show that it asserted its rights in a timely manner by making demand and filing this action. Finally, Gotham can defeat laches by showing that Hallwood was not materially affected by waiting from the time that Gotham learned of the transactions until Gotham first started asserting its rights as a limited partner. I cannot rule on a laches defense not yet raised, but I can examine Gotham's request for an exception in light of the many opportunities that Gotham would have to argue the merits of that defense.

■ Gotham seeks to tack its new claims to this action to secure the earlier filing date as a rebuttal to a laches defense. I do not question that Gotham could use the earlier date,[45] but I question what significance this would have. It is hard to believe that the four-month difference in filing dates between this action and Gotham's derivative suit will become significant. Undoubtedly, the filing of the action is a significant event, but plaintiff's pursuit of a § 17–305 action is (without tacking) still strong evidence that plaintiff was aggressively asserting its claims at that time. Unlike a statute of limitations with which a plaintiff can comply only by filing a claim, a laches analysis would afford the § 17–305 action as much weight without tacking the breach of fiduciary duty and breach of contract claims as it would by tacking them.[46] Because there is no discernible legal difference between tacking or not tacking, amending this action could not substantially affect Gotham's ability to rebut a laches defense. Therefore, Gotham has failed to show any legal justification for an exception.

Even if I were to assume that the four month period is material, I still find unpersuasive Gotham's argument that defendants will exploit a delay created by their own stonewalling.[47] Stonewalling by defendants, if it prevented Gotham from learning about their wrongful conduct, is susceptible to attack under the grounds of equitable tolling or fraudulent concealment.[48] I am confident that Gotham will make its best arguments either that it asserted its claims in a timely manner or that its inability to do so resulted from wrongful conduct on defendants' part. Thus, even if the filing date was legally material to the laches defense, I find that Gotham would have ample opportunity to oppose laches when (and if) defendants raise it. I see no reason to grant an exception to the rule against amending § 17–305 complaints to preclude a laches defense where Gotham is fully able to attack that defense on the merits.

tions are fundamentally changed" or "to delay in bringing an equitable cause of action"); *see also* 27A AM. JUR.2d, *Equity* § 157 (2d ed.1996). The treatise defines laches as a fluid cause of action, defining its two general elements as "(1) [d]elay by a party in asserting a known right or claim and (2) prejudice, [or] injury ... caused by ... the delay." *Id.* § 158 (citations omitted). Often, knowledge of the disputed right or claim becomes an issue. *See Id.* § 158, n. 66 (listing cases where knowledge was cited as element of laches). Thus, a three element definition of laches describes a frequent manifestation of this equitable defense.

45. *See In re MAXXAM, Inc./Federated Dev.*, Del. Ch., 698 A.2d 949, 958 (1996) (stating that claims arising from same transaction, though added after the running of the statute of limitations, related back to the original filing).

46. *Bay Newfoundland Co. v. Wilson & Co.*, Del. Ch., 4 A.2d 668, 671 (1939) (stating proposition that statute of limitations will guide, but not bind a court of equity.)

47. *See Bovay*, Del.Supr., 38 A.2d at 820 (stating principle that fiduciaries who enrich themselves by breaching their duties cannot avail themselves of the protection of a statute of limitations).

48. *Carlton Inv. v. TLC Beatrice Int'l Holdings, Inc.*, Del. Ch ., C.A. No. 13950, mem. op. at 36, Allen, C., 1995 WL 694397 (Nov. 21, 1995) (Holding that to show equitable tolling, plaintiff must allege "(1) that defendants had a fiduciary relation with plaintiff, (2) self-dealing by the defendants, and (3) that plaintiff did not know or have reason to know of the facts giving rise to the alleged wrong."); *Church of Religious Science v. Fox*, 266 A.2d 881, 885 (1970) ("A fraudulent concealment will suspend the bar of time only until the plaintiff's rights have been discovered or could have been discovered by the exercise of reasonable diligence.").

### III. Conclusions

I conclude that the special proceeding authorized by § 17–305 is a focused, summary proceeding whose purpose would be undermined if this Court were to entertain Gotham's breach of fiduciary duty and breach of contract claims. Gotham has not shown that its right to a fair and just consideration of the merits of these claims would be unfairly prejudiced if its proposed motion to amend is not granted. Accordingly, Gotham's motion *is denied.*

*IT IS SO ORDERED.*