COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: September 18, 2020
Date Decided: September 21, 2020

Kurt M. Heyman, Esquire
Aaron M. Nelson, Esquire
Hayman Enerio Gattuso & Hirzel LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801

Robert J. Katzenstein, Esquire
Smith, Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

Re: *Pearl City Elevator, Inc. v. Rod Gieseke, et al.*
C.A. No. 2020-0419-JRS

Dear Counsel:

Plaintiff, Pearl City Elevator, Inc., seeks a declaration under 6 *Del. C.* § 18-110 ("Section 18-110") that it may appoint a seventh and controlling member to the Board of Governors (the "Board") of nominal defendant, Adkins Energy, LLC ("Adkins" or the "Company"). The Board currently consists of six members, three designated by Pearl City, as an Adkins member, and three designated by Adkins' General Members.[1] Section 5.2 of Adkins' Third Amended and Restated Limited

---

[1] I refer to the Pearl City designees to the Board as "Pearl City Governors" and the General Member designees as "General Governors."

Operating Agreement (the "Operating Agreement") provides that if any Adkins member properly acquires more than 56% of Adkins' membership units, that member may appoint a seventh Governor to the Board. Pearl City alleges it has crossed the 56% threshold by acquiring units through an Exchange Offer and then individual acquisitions. The General Members, through the General Governors, challenge the *bona fides* of these acquisitions and, relatedly, Pearl City's right to designate the seventh Governor.[2]

The law firm, Locke Lord LLP, has served as Adkins' outside counsel for years. According to Pearl City, after its dispute with the General Governors emerged, Locke Lord began to give legal advice to the General Members and General Governors, to the exclusion of Pearl City and the Pearl City Governors, on two matters of relevance here: (1) the *bona fides* of Pearl City's unit acquisitions and, relatedly, the effectiveness of Pearl City's effort to place a seventh member on the Board; and (2) Adkins' legal position in its dispute with Pearl City relating to a

---

[2] The alignment of the parties here is curious. Pearl City, as member, has brought suit against the General Governors. Neither the Pearl City Governors nor the General Members are named as parties.

Grain Delivery Agreement (the "GDA") between Pearl City and Adkins.[3]  Pearl City

has sought discovery from Locke Lord in this action relating to these matters and

Locke Lord has objected to the discovery on grounds of privilege.  Pearl City now

moves to compel (the "Motion").

The subpoena directed to Locke Lord seeks documents that appear to fit

within three baskets: (1) documents relating to the firm's retention and billings;

(2) documents relating to the GDA;[4] and (3) documents relating to Pearl City's

attempt to place a seventh Governor on the Board.  At the threshold, the Motion calls

the question of whether Locke Lord may shield information from Pearl City as

member, or the Pearl City Governors, on grounds of attorney-client privilege.  For

reasons I explain briefly below, the answer is—"it depends."  Specifically, the

answer depends on the extent to which Pearl City's interests are adverse to Adkins'

---

[3] According to the General Governors, one of Pearl City's principal motives in seeking to gain control of the Board is to prevent Adkins from cancelling the lucrative GDA notwithstanding that Pearl City's performance has not met the standards required by the contract.

[4] Although not entirely clear, in briefing on the Motion, Pearl City appears to take the position and that it does not now seek, and has never sought, documents from Locke Lord relating to the GDA.  For the sake of completeness, I address whether Pearl City would be entitled to these documents in order to put the issue to rest.

interests. As relates to the GDA, there is clear adversity. As relates to Pearl City's claim to a seventh Board member, however, Adkins is and should be agnostic. There is no adversity between Adkins and Pearl City on that issue. Thus, the Motion is granted in part and denied in part.

## ANALYSIS

Court of Chancery Rule 26(b)(1) permits discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[5] When a party or third-party withholds discovery on the ground of privilege, that party bears the burden "of establishing each of [the applicable privilege's] elements."[6]

The privilege issue takes on added complexity when company counsel asserts attorney-client privilege as a basis to withhold information from an owner or board member. Owners, such as stockholders, may overcome the privilege as asserted by

---

[5] Ct. Ch. R. 26(b)(1).

[6] *Rembrandt Tech., L.P. v. Harris Corp.*, 2009 WL 402332, at *5 (Del. Super. Ct. Feb. 12, 2009).

company counsel upon a showing of "good cause."[7]  As for board members, their

"right to information is essentially unfettered in nature . . . [and] extends to privileged

material."[8]   "The same general rule applies to LLCs and their managers and

regardless of the basis for the privilege assertion—attorney-client or work product."[9]

Most general rules have exceptions, and the law of attorney-client privilege

as applied to board members and company counsel is no different. Our law is now

settled that, as exceptions to the general rule, privileged information may be withheld

from current directors in three situations:

> First, a board member can limit his or her rights by agreement *ex ante*.
> Second, a board can form a special committee excluding the director,
> that committee can engage legal counsel, and then that committee's
> communications would be protected.  Third, privileged information can
> be withheld "once sufficient adversity exists" between the board
> member and the entity, such that the board member "could no longer

---

[7] *See Deutsch v. Cogan*, 580 A.2d 100, 105 (Del. Ch. 1990) (citing and explaining *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970)).

[8] *Kalisman v. Friedman*, 2013 WL 1668205, at *3–4 (Del. Ch. Apr. 17, 2013) (internal citation omitted); *Kirby v. Kirby*, 1987 WL 14862, at *7 (Del. Ch. July 29, 1987) (holding that, in a Section 225 action, a company may not invoke the attorney-client privilege to deny plaintiffs access to documents prepared while they were directors).

[9] *Mehra v. Teller*, 2020 WL 1230285, at *1 (Del. Ch.  Mar. 11, 2020) (ORDER) (citations omitted).

have a reasonable expectation that he was a client" of counsel to the entity.[10]

With these standards in mind, I address, in turn, the three baskets of documents sought in the Locke Lord subpoena.

### 1. Retention and Billing Records

Before addressing the privilege question, I pause to consider the relevance versus the burden of producing documents in response to this request. Pearl City sought and was granted expedited scheduling in this summary proceeding. The action was filed on May 29, 2020; the case will be tried by the end of October, 2020. We are in the midst of a global pandemic and yet all parties have been working hard to take expedited discovery in preparation for trial. But discovery in summary proceedings is necessarily (and appropriately) limited.[11] In this regard, the court's orientation regarding the scope of discovery in expedited litigation typically follows

---

[10] *Mehra*, 2020 WL 1230285, at *2 (citations omitted).

[11] *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 509 (Del. 2005); *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 714 A.2d 96, 103 (Del. Ch. 1998).

the guidance of two ageless philosophers: "You can't always get what you want, but if you try sometimes, you just might find, you get what you need."[12]

Pearl City's request for Locke Lord's retention letter(s) (going back for years) and billing records falls in the category of "you don't always get what you want. . . ." The relevance of these documents to this summary control dispute is minimal at best. And the burden of production, with accompanying redactions, would be extensive. As discussed below, Pearl City will receive Locke Lord's documents related to the core issues in dispute. In the spirit of proportionality, particularly in expedited litigation, those documents are what Pearl City needs.[13] The Motion is denied as relates to Locke Lord's retention and billing documents.

## 2. The GDA Records

As noted, company counsel may withhold documents from a board member on the ground of attorney-client privilege when that board member either has agreed, usually contractually, that he will not have access to certain company information,

---

[12] Richards, Jagger, *You Can't Always Get What You Want* © Abko Music, Inc. (1969).

[13] *See In re Oracle Corp. Deriv. Litig.*, 2019 WL 6522297, at *13 (Del. Ch. Dec. 4, 2019) (noting that in Chancery litigation discovery must be "proportional to the needs of the case").

or when the board member and the company are sufficiently adverse to one another with respect to a matter that the company's counsel no longer represents the board member as to that matter.[14] Here, both exceptions apply to Locke Lord's advice to Adkins and the General Governors regarding the GDA.

Under Section 5.15 of the Operating Agreement, the GDA is deemed a "Related Transaction" as it is a "contract between [Adkins] and a Member (Pearl City)." With respect to Related Transactions, Section 5.15 makes clear that only Disinterested Governors, in this case the General Governors, shall "consider, debate or vote" on matters related to "any such Related Transaction." Section 5.15 also directs that "all non-Disinterested Governors [i.e., Pearl City] shall not be entitled to vote or to receive any documents or communications of or to the Company with respect to such Related Transaction."

Thus, under Section 5.15, Pearl City has both contractually waived its right to receive privileged information from the Company's counsel related to the GDA, and has confirmed its adverse relationship with the Company related to that contract.

---

[14] *See Mehra*, 2020 WL 1230285, at *2.

Accordingly, the Motion is denied as relates to Locke Lord's GDA-related documents.

### 3. The Control Dispute Records

Pearl City seeks records from Locke Lord regarding its advice either to Adkins or the General Governors (or General Members) relating to Pearl City's right to place a seventh member on the Board. According to Locke Lord, the documents are privileged as to Pearl City because (a) Pearl City, as member, is the only plaintiff in this litigation and it cannot assert the Pearl City Governor's right to Adkins' privileged information; and (b) Pearl City is adverse to Adkins with respect to the control contest at issue here. As explained below, neither argument is persuasive.

### a. Pearl City's Standing

Pearl City maintains that this court's decision in *Moore Business Forms, Inc. v. Cordant Holdings Corporation* directly refutes Locke Lord's standing argument.[15] After carefully reviewing *Moore* and related authority, I agree. In *Moore*, a preferred

---

[15] 1996 WL 307444 (Del. Ch. June 4, 1996).

stockholder (Moore), who was contractually permitted to designate a member (Rogers) to the board of the company at issue (Holdings), sought production of Holdings' privileged information in the litigation, and Holdings objected that Moore was a stockholder, not a member of the board. The court rejected the distinction Holdings asked the court to draw and ordered production:

> The relationship between Moore and Holdings is defined by the Stockholders' Agreement. Mr. Rogers' position as a Holdings director derived entirely from his status as Moore's designee pursuant to that Agreement. All parties understood that Mr. Rogers would be acting as Moore's representative on the Holdings Board and that his tenure as a director would be at Moore's pleasure. The Stockholders Agreement cannot reasonably be construed otherwise. Nothing in the Stockholders Agreement precludes Moore from receiving any information imparted to Mr. Rogers. It therefore follows that if Mr. Rogers was entitled to the disputed communications by virtue of his position as a Holdings director, then Moore would also be entitled to these communications by virtue of the Stockholders' Agreement.[16]

As in *Moore* and *AOC*, Pearl City "is just as much the 'client' of [Locke Lord] as the [Pearl City Governors or General Governors] are."[17] Nothing in the Operating

---

[16] *Id.* at \*4; *see also AOC Ltd. P'ship v. Horsham Corp.*, 1992 WL 97220, at \*1 (Del. Ch. May 5, 1992) (rejecting the distinction between designated board member and designating owner for purposes of determining the owner's right to access privileged company information through its designated board member).

[17] *AOC P'rs*, 1992 WL 97220, at \*1.

Agreement would restrict the Pearl City Governor's right to access privileged information from Adkins' counsel; there are no Related Transactions involved in Pearl City's attempts to acquire additional Adkins units or in its effort to assert control over the Board. And while the Operating Agreement, at Section 8.9, does provide that Adkins' company counsel "shall not be deemed engaged by any Member," and that no privilege shall exist between Members and company counsel, that provision does not purport to limit the right of Board members to access company privileged information.

### b. Pearl City's Adversity to Adkins

That leaves adversity as the only basis on which Locke Lord can prevent Pearl City from accessing the privileged information Pearl City seeks with respect to the control dispute.[18] Of course, as a general matter, Adkins should be neutral as to that dispute.[19] The dispute here, as is common in such matters, is between competing

---

[18] Locke Lord does not argue that the second exception to board member access—the formation of a special committee of the Board to the exclusion of certain board members—applies here. *See Mehra*, 2020 WL 1230285, at *2.

[19] *See Law Debenture Trust Co. v. Petrohawk Energy Corp.*, 2007 WL 2248150, at *11 n.37 (Del. Ch. Aug. 1, 2007); *Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 270 n.11 (Del. Ch. 1987).

factions of directors designated by competing factions of owners. Locke Lord argues this case is different from the typical control dispute because Pearl City's unit acquisitions threaten Adkins' qualification to continue to be taxed as a partnership for federal income tax purposes, thereby rendering Pearl City and Adkins adverse.[20] I disagree.

First, Locke Lord has not demonstrated, as is its burden as the proponent of the privilege, that Pearl City has a desire to impair Adkins' federal tax status or otherwise adversely affect the Company. Indeed, Pearl City maintains it has done nothing that would place Adkins' tax status in jeopardy and has no intent to do so. The General Governors disagree and have advanced this point as a basis to challenge Pearl City's recent acquisition of units and related claim to control of the Board. If Locke Lord, as Company counsel, has developed an expert opinion that Pearl City is placing Adkins' favorable tax status in jeopardy, it should be sharing that advice with all members of the Board, not just the General Governors, for the sake of all members. Second, and relatedly, Locke Lord simply should not be taking sides in

---

[20] *See* Operating Agmt. § 11.14 (addressing the need to make "elections" "which would cause the Company not to be treated as a partnership for federal or state income tax purposes").

this control dispute.[21]  The General Governors are well represented by counsel here and Locke Lord should not be contributing to their defense efforts.  As Company counsel, Locke Lord's interest is to ensure that both factions are informed of the Company's rights, obligations, risks and exposures *vis-a-vis* its members.  Locke Lord has no basis on this record to withhold that advice from any member of the Board.

## CONCLUSION

Based on the foregoing, Pearl City's Motion to Compel is GRANTED in part and DENIED in part.  Locke Lord shall have no obligation to provide documents regarding its retention or billings.  Nor must it produce documents relating to advice

---

[21] In this regard, Locke Lord's reliance upon *SBC Interactive, Inc. v. Corporate Media P'rs*, 1997 WL 770715 (Del. Ch. Dec. 9, 1997) is misplaced.  There, the court held that a party cannot seek privileged information when there is no agreement or other understanding between that party and counsel that an attorney-client relationship has been created between them.  *Id.* at \*4.  Here, neither Pearl City nor the General Members have an agreement or understanding with Locke Lord that the firm will serve as counsel to either faction.  Indeed, the Operating Agreement makes clear that no such relationship exists.  Yet, Locke Lord has shared its advice regarding this control dispute (specifically the *bona fides* of Pearl City's recent unit acquisitions) with the General Members (through the General Governors) but not with either the Pearl City Governors or Pearl City itself.  In the interests of all concerned, Locke Lord, as Company counsel, should be sharing its legal advice with both factions.  This is particularly so given that both factions are represented by their own counsel.

it has provided to the General Governors or General Members relating to the GDA.

Locke Lord must, however, produce the following documents: (1) privileged and

non-privileged communications and documents concerning the appointment of the

seventh Governor to the Board and private sales of Adkins units between Pearl City

and certain General Members, and (2) communications with the General Governors

concerning the topics identified in Item 1 above.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*