**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SURESH MANIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2025-1278-CDW |
| | ) | |
| NURISH DIGITAL, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER DISMISSING CASE AS MOOT</u>

**WHEREAS:**

A.    Plaintiff Suresh Manian is a stockholder and former officer and director of defendant Nurish Digital, Inc.[1]

B.    On March 10, 2025, plaintiff resigned as an officer and was removed as a director of defendant.[2]  Other than a vague reference to "near-term corporation actions and transition logistics,"[3] the complaint does not say why plaintiff resigned as an officer or was removed as a director.

---

[1] Verified Compl. for Inspection of Books and Recs. Under 8 Del. C. § 220 ("Compl."), Dkt. 1 ¶¶ 1, 5, 7–8.  Plaintiff is proceeding as a self-represented litigant in this action.

[2] *Id.* ¶¶ 7–8.

[3] *Id.* ¶ 6.

C.     On March 25, defendant "sent $21 by Zelle transfer" to plaintiff.[4] The complaint does not explain the purpose or significance of this transfer.

D.     On August 12, plaintiff made an informal request for books and records relating to the events of March 10 and March 25.[5]    Defendant produced some documents to plaintiff but not everything plaintiff sought.[6]

E.     On October 8, plaintiff served a written demand under Section 220 of the Delaware General Corporation Law, 8 *Del. C.* § 101, *et seq.* ("Demand").[7]   The Demand says that plaintiff's purpose is "to investigate potential mismanagement, breaches of fiduciary duty, and related misconduct by current directors and officers of [defendant]," but provides no detail whatsoever regarding the nature of the alleged potential mismanagement, fiduciary breaches, or misconduct.[8]   The Demand requests a variety of books and records across five categories:   (1) "Board Structure and Governance Documents"; (2) "Stock and Equity Records"; (3) "SAFE Agreement and Related Records"; (4) "Stock Ledger and Ownership Records"; and

---

[4] *Id.* ¶ 9.

[5] *Id.* ¶ 10.

[6] *Id.* ¶¶ 11–14.

[7] *Id.* ¶ 16.

[8] *Id.* Ex. 2 at 1.

(5) Resignation Documentation" relating to plaintiff's resignation from defendant.[9]

F.      Following receipt of the Demand, defendant produced additional documents to plaintiff but, again, did not produce everything plaintiff wanted.[10]

G.      Accordingly, on November 4, plaintiff filed a complaint seeking books and records from defendant under Section 220.[11]

H.      As directed by the court's assignment letter,[12] the parties promptly met and conferred to negotiate a schedule and try to minimize the scope of the dispute.  They were unable to reach full agreement, so they submitted their respective proposed schedules on November 17 and 18.[13]

I.      On November 19, the court issued a minute order requesting a status conference.[14]

J.      On November 25, the court entered the parties' stipulated Order Governing the Production and Exchange of Confidential Information.[15]

---

[9] *Id.* at 1–2.

[10] Compl. ¶¶ 18–21.

[11] *See id.* at 1.

[12] Dkt. 18.

[13] Dkts. 20–22.

[14] Dkt. 23.

[15] Dkt. 27.

K. On December 2, the court held a status conference with the parties to discuss the case status and schedule.[16] In light of defendant's substantial efforts to produce books and records to plaintiff notwithstanding several meritorious defenses to the complaint, and the significant progress the parties were making on their own, the court declined to set the case down for trial and instead directed another status conference to be held a few weeks later while the parties continued to work through defendant's production of books and records.[17]

L. On December 22, the court held the follow-up status conference, during which the parties discussed the books and records produced by defendant to date and their views on what issues remained open, and the court offered some informal thoughts on those open issues.[18] Plaintiff requested an additional three weeks to complete his review of the books and records produced by defendant, so the court directed the parties to submit a joint status report by January 12, 2026.[19]

M. On January 12, the parties submitted separate status reports.[20]

---

[16] Dkts. 28, 30.

[17] Dkt. 30.

[18] Dkt. 31.

[19] *Id.*

[20] Dkts. 32, 33.

N.     In his status report, plaintiff says "Defendant has completed production of documents responsive to each category in Plaintiff's § 220 demand[.]"[21] This includes, plaintiff says, "non-existence confirmation where the Company contends no responsive documents exist."[22] Plaintiff also says in the status report that two open issues remain: (1) concerns he has about the "provenance/authenticity" of unspecified native files produced by defendant because those files "appear to be missing metadata and file properties that are present in other similar files produced in this matter"; and (2) "provenance uncertainty" that he has about a confidentiality undertaking signed by defendant's forensic consultant.[23] As to the former, plaintiff wants to know why certain native files are not as he expects them to be; as to the latter he wants more information about the circumstances surrounding the execution of two copies of that undertaking.[24] Plaintiff concludes by requesting guidance from the court whether these remaining issues can be addressed in this Section 220 case or whether plaintiff must pursue them in a separate proceeding.[25]

---

[21] Dkt. 32 at 1.

[22] *Id.*

[23] *Id.* at 1–2.  Plaintiff has since directly contacted defendant's forensic consultant across various channels.  *See* Dkt. 33 at 7–8; *id.* Ex. E–G.

[24] Dkt. 32 at 2.

[25] *Id.*

O.     In its status report, defendant says plaintiff declined requests to meet and confer after the December 22 status conference and has "failed to share with Defendant exactly what he believes remains pending for purposes of this Status Report."[26]   Defendant says it "has produced all relevant, responsive, and non-privileged Company documents, as they are kept in the ordinary course of business and with native metadata when requested."[27] Defendant says it has done this "in response to not only every single specific document request demanded in [the complaint], but also in response to Plaintiff's informal document requests made since counsel has entered its appearance on behalf of Defendant."[28]   Defendant explains it "engaged a forensic expert consultant" in connection with files on defendant's Google Drive, and subsequently produced to plaintiff "his specifically demanded documents from the Google Drive, preserving all native metadata."[29]

P.     As to the remaining issues, defendant says either "no further documents or communications exist" or "the requested item . . . is not a document request, but a discovery request for information about the

---

[26] Dkt. 33 at 1.

[27] *Id.* at 5.

[28] *Id.*

[29] *Id.*

documents."[30]   Defendant objects to plaintiff's remaining information requests as outside the scope of a proceeding under Section 220, and argues that "this matter is now ripe for a voluntary dismissal pursuant to stipulation under [Court of Chancery] Rule 41(a)."[31]

**IT IS ORDERED**, this 30th day of January, 2026, that:

1.      The court dismisses this case as moot.

2.      Plaintiff states in his status report that defendant has completed its production of documents.[32]  He does not contend that defendant has failed to produce any documents responsive to the demand as defendant keeps them in the ordinary course of its business, nor does he take issue with defendants' representations, where made, that no responsive documents exist.

3.      That admission signals the end of this matter.  Plaintiff submitted a demand to inspect certain of defendants' books and records.  Defendant produced those books and records (and more) or certified that those books and records do not exist.  Defendant has produced what books and records it has

---

[30] *Id.*

[31] *Id.* at 8–9.

[32] Dkt. 32 at 1.

as it keeps them, with commendably little fuss. That is all that Section 220 requires of it.[33]

4. Section 220 cases are summary proceedings, focused on determining if a stockholder has met the statutory requirements to obtain books and records, not on adjudicating substantive disputes about those books and records.[34] This includes disputes about the provenance or authenticity of those books and records, which require discovery and fact-finding that are beyond the limited scope of Section 220 cases. As the court explained to plaintiff during the December 22 status conference, if there are legally

---

[33] *Cf. Khanna v. Covad Commc'ns. Gp.*, 2004 WL 187274, at *8 (Del. Ch. Jan. 23, 2004) ("The documents in this category are also appropriate for inspection. Again, [defendant] represents that they have been produced and, if so, the request is moot.").

[34] *See Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 714 A.2d 96, 104 (Del. Ch. 1998) ("The [inspection] litigation (and discovery) is restricted to three basic issues: (i) whether the shareholder made proper demand for the information to the corporation; (ii) . . . whether the shareholder is a shareholder of record; and (iii) whether the information sought is reasonably related to the interests of the plaintiff in his or her capacity as a shareholder of the corporation. This Court has consistently rejected the injection into a [Section] 220 proceeding of collateral issues not necessary to adjudicate those three issues.") (citations omitted). *See also Mite Corp. v. Heli-Coil Corp.*, 256 A.2d 855, 857 (Del. Ch. 1969) ("[Section] 220 is narrow in object and scope and is simply a 'look at the list' act. It contemplates summary proceedings and the accelerated scheduling of cases under it emphasizes prompt processing and disposition.").

significant provenance or authenticity issues relating to the books and records produced by defendant, they must be raised in a separate proceeding.[35]

5. Books-and-records litigation, moreover, demands "[s]trict adherence" to Section 220's requirements.[36] This means, among other things, that a stockholder cannot expand the scope of their demand during litigation of their Section 220 case.[37] That is what plaintiff is doing with his requests for additional "provenance/authenticity" materials, which amount to 10 entirely new categories of records outside the scope of his demand.[38]

---

[35] *See Garner v. Authenticity.ai Invs., LLC*, 334 A.3d 1108, 1131 (Del. Ch. 2025) ("Should the Defendant again confirm that no such books and records exist in support thereof, the lack of documents clarifying the discrepancy is likely on its face 'enough information to effectively address the problem, either through litigation or through direct contact with the corporation's directors and/or stockholders.'") (quoting *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 115 (Del. 2002)). *See also Wei v. Zoox, Inc.*, 268 A.3d 1207, 1219 (Del. Ch. 2022) ("When interpreting the scope of inspection under Section 220, the court must 'balance the interests of the stockholder and the corporation.' Consequently, the scope of a Section 220 inspection is inevitably narrower than what a litigant might receive in plenary litigation.") (citations omitted).

[36] *See, e.g.*, *Fuchs Family Tr. v. Parker Drilling Co.*, 2015 WL 1036106, at *4 (Del. Ch. Mar. 4, 2015) (quoting *Barnes v. Telestone Techs. Corp.*, 2013 WL 3480270, at *2 (Del. Ch. June 10, 2013)).

[37] *See NVIDIA Corp. v. City of Westland Police & Fire Ret. Sys.*, 282 A.3d 1, 15 (Del. 2002) ("[S]ection 220 plaintiffs cannot broaden the scope of their requests throughout litigation, as such a change would be prejudicial to the corporate defendant.").

[38] *Contrast* Dkt. 33 Ex. A at 7–10 (email correspondence between plaintiff and defendant's counsel discussing, among other things, plaintiff's new, provenance-related information requests), *with* Dkt. 1 Ex. 2 (plaintiff's Section 220 demand letter).

6. In short, this litigation is moot and must be dismissed.

7. As to plaintiff's final request for guidance regarding his ability to "seek a narrowly tailored preservation/status quo order" before pursuing a separate proceeding,[39] answering that question would require the court to give legal advice or render an advisory opinion, neither of which the court is permitted to do.[40]

8. This is a final report under Court of Chancery Rule 144(b)(2). Under Court of Chancery Rule 144(d)(2), any party taking exceptions must file a notice of exceptions by February 4, 2026.

/s/ *Christian Douglas Wright*
Magistrate in Chancery

---

[39] Dkt. 32 at 2–3.

[40] *See, e.g.*, *Wood v. Collison*, 2014 WL 7149214, at *4 (Del. Super. Dec. 12, 2014) ("It is not the Court's role to provide legal advice to litigants."); *Bruno v. Western Pac. R.R.*, 1984 WL 19477, at *2 (Del. Ch. Feb. 8, 1984) ("For me to make any decision on the present record would be for the Court to give legal advice which it cannot do."); *XI Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014) ("Delaware courts do not render advisory or hypothetical opinions.").