**CENTRAL LABORERS PENSION FUND, Plaintiff Below, Appellant,**

v.

**NEWS CORPORATION, Defendant Below, Appellee.**

No. 682, 2011.

Supreme Court of Delaware.

Submitted: April 18, 2012.
Decided: May 29, 2012.

---

93.  *Peden v. Gray,* 886 A.2d 1278 (Del.2005) (TABLE).

94.  *In re Trust for Grandchildren Wilbert L.,* 2011 WL 3444569, at *28.

95.  *Id.*

96.  *Id.* at *27.

Jay W. Eisenhofer, Esquire, Geoffrey C. Jarvis, Esquire (argued), and Diane Zilka, Esquire, Grant & Eisenhofer, P.A., Wilmington, Delaware, for appellant.

Gregory V. Varallo, Esquire (argued), Catherine G. Dearlove, Esquire, and Blake Rohrbacher, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, and Richard L. Stone, Esquire and Julie Ann Shepard, Esquire, Jenner & Block LLP, Los Angeles, California, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice:

The plaintiff-appellant, Central Laborers Pension Fund ("Central Laborers"), instituted this action, under section 220 of the Delaware General Corporation Law, to compel the defendant-appellee, News Corporation ("News Corp."), to produce News Corp.'s books and records (the "220 Action") related to its acquisition of Shine Group Ltd. (the "Shine Transaction"). Central Laborers seeks to inspect News Corp.'s books and records to investigate potential breaches of fiduciary duty in connection with the Shine Transaction. The same day that it filed this 220 Action, Central Laborers, joined by another plaintiff, commenced a derivative action against News Corp.'s directors and News Corp., as a nominal defendant (the "Derivative Action"), claiming that the Shine Transaction was consummated at an unfair price as the result of an unfair process.

In the Court of Chancery, News Corp. moved to dismiss the 220 Action on three grounds. First, it argued that Central Laborers' inspection request failed to comply with the statutory procedural requirements of section 220. Second, News Corp. submitted that the simultaneous filing of the Derivative Action and the 220 Action refutes any claim of a proper purpose for its inspection request. Third, it contended that the scope of the inspection relief requested is overbroad.

The Court of Chancery granted News Corp.'s motion to dismiss on the second ground asserted by News Corp.—that because of its pending Derivative Action, Central Laborers is unable to state a proper purpose for seeking to inspect the books and records of News Corp. The Court of Chancery concluded that "once the derivative action is filed, and until the judicial processing of the dismissal motion reaches the point where a recasting of the allegations has been authorized, the stockholder may not, as a general matter, demonstrate a proper purpose for invoking Section

220."[1] Accordingly, the Court of Chancery held "[b]ecause Central Laborers' currently-pending derivative action necessarily reflects its view that it had sufficient grounds for alleging both demand futility and its substantive claims without the need for assistance afforded by Section 220, it is, at this time, unable to tender a proper purpose for pursuing its efforts to inspect the books and records of News Corp."[2]

Central Laborers raises two claims of error in this appeal. First, Central Laborers' argues that the time to evaluate whether a stockholder has a proper purpose to inspect books and records is when the inspection demand was made. According to Central Laborers, because the inspection demand in the 220 Action was made before the filing of the Derivative Action, Central Laborers' proper purpose was not mooted by the subsequent filing of the Derivative Action. Second, Central Laborers argues that even if "a proper purpose in a[n inspection] demand letter can be impacted by a subsequently-filed derivative complaint," under Delaware law, "such a proper purpose exists so long as the documents sought by the plaintiff could be used to amend the derivative complaint." According to Central Laborers, a section 220 inspection demand should be deemed to have a proper purpose despite the pendency of a derivative action, so long as leave to amend has not been explicitly precluded. Central Laborers submits that, because it had a right to amend the Derivative Complaint at any time during the Section 220 Action, it is not barred under Delaware law from establishing a proper purpose.

The Court of Chancery dismissed the 220 Action solely for lack of a proper purpose. For that reason, it did not address "the additional grounds for dismissal posited by News Corp." However, this Court may rest its appellate decision on any issue that was fairly presented to the Court of Chancery, even if that issue was not addressed by that court.[3] Accordingly, this Court may affirm the judgment of the Court of Chancery on the basis of a different rationale.[4]

News Corp. asks this Court to affirm the judgment of the Court of Chancery dismissing Central Laborers' Section 220 Action, on the alternative basis that Central Laborers did not comply with the form and manner of making a demand for an inspection of documents under Section 220(b). We agree that is the proper basis for deciding this appeal. A Section 220 plaintiff's compliance with the statutorily mandated procedures is a precondition to having the propriety of its purpose for inspection addressed. The Court of Chancery should not have addressed whether Central Laborers had shown a proper purpose for inspecting News Corp.'s records until that court first decided that Central Laborers had complied with the mandatory statutory procedural standing requirements.

Central Laborers' failure to attach documentary evidence of its beneficial ownership of News Corp. stock is statutorily fatal to both its section 220 inspection demand and to the 220 Action, and mandates an affirmance of the Court of Chancery's dismissal. Therefore, on that basis alone, and without deciding whether Central Laborers asserted a proper purpose, the

1. *Central Laborers Pension Fund v. News Corp.*, 2011 WL 6224538, at *2 (Del.Ch. Nov. 30, 2011).

2. *Id.*

3. *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1390 (Del.1995).

4. *Id.*

judgment of the Court of Chancery is affirmed.

### Facts

News Corp. is a Delaware corporation with its principal offices in New York, New York. News Corp.'s media holdings include the Fox networks, the *Wall Street Journal*, and the *New York Post*. The plaintiff is an Illinois-based Taft–Hartley pension fund that purports to own beneficially shares in News Corp.

On February 21, 2011, News Corp. issued a press release announcing that it and the Shine Group ("Shine") had reached an "agreement in principle" for News Corp. to acquire all of Shine's outstanding shares in a transaction potentially valued at £415 million (the "Shine Transaction"). Shine is an international television production company that produces market-leading television programs in several countries. Shine was formed in 2001 by Elisabeth Murdoch, who is the daughter of News Corp.'s Chairman and CEO, Rupert Murdoch.

On March 7, 2011, counsel for Central Laborers sent a document demand letter to Lawrence Jacobs, General Counsel of News Corp., requesting to inspect books and records relating to the Shine Transaction (the "Inspection Demand"). News Corp. received Central Laborers' inspection request on March 8, 2011. Central Laborers asserted that its purpose for making the Inspection Demand was to investigate potential breaches of fiduciary duty or other wrongdoing in connection with the Shine Transaction. The Inspection Demand also asserted that Central Laborers wanted "to determine whether a presuit demand is necessary or would be excused prior to commencing any derivative action on behalf of the Company." The Inspection Demand listed twenty categories of information for which inspection was being sought.

On March 16, 2011, Central Laborers, along with Amalgamated Bank, as trustee for certain investment funds, filed in the Court of Chancery a Verified Shareholder Derivative Complaint (the "Derivative Complaint") asserting claims against News Corp., as a nominal defendant, and the News Corp. board. The Derivative Complaint challenged the Shine Transaction as the product of an unfair process that resulted in an unfair price. It asserted claims for breach of fiduciary duty against each member of News Corp.'s board of directors and challenges to the board's independence. The Derivative Complaint also alleged that demand on the board was excused because the directors have shown an unwillingness or inability to challenge Rupert Murdoch's purported control over News Corp.

The 220 Action, which was initiated approximately one hour *after* the filing of the Derivative Action, sought to compel inspection of News Corp.'s books and records that related to the Shine Transaction. The complaint in the 220 Action alleged that one primary purpose for the requested inspection was: "to investigate possible breaches of fiduciary duty" ultimately "to determine whether a presuit demand is necessary or would be excused *prior to* commencing any derivative action on behalf of the Company." [5]

In support of its motion to dismiss the 220 Action, News Corp. argued that Central Laborers' Inspection Demand failed to comply with section 220(b) because it was not accompanied by evidence of Central Laborers' beneficial stock ownership. Apparently, Central Laborers was unaware of that omission in its Inspection Demand

---

5. Emphasis added.

until News Corp. briefed its motion to dismiss in the Court of Chancery. Nevertheless, Central Laborers did not send News Corp. a new or amended Inspection Demand containing the omitted evidence.[6] Instead, along with its answering brief on News Corp.'s motion to dismiss in the Court of Chancery, Central Laborers filed a revised Koeppel Affidavit and the missing documentary evidence of its beneficial stock ownership.

In the Court of Chancery, Central Laborers' attorney conceded that the evidence of its beneficial stock ownership had not been included with the Inspection Demand. He characterized that omission as a "clerical error." Central Laborers' argued that any deficiency in the original Inspection Demand was cured when it submitted Koeppel's revised affidavit and an account statement of beneficial stock ownership with its brief in opposition to News Corp.'s motion to dismiss the 220 Action.

### Inspection Rights

■ "Stockholders of Delaware corporations enjoy a qualified right to inspect the corporation's books and records."[7] These rights originated at common law and were recognized because "[a]s a matter of self-protection, the stockholder was entitled to know how his agents were conducting the affairs of the corporation of which he or she was a part owner."[8] Stockholder inspection rights are codified in title 8, section 220(b) of the Delaware Code. That section provides, in part, that "[a]ny stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right . . . to inspect for any proper purpose . . . [t]he corporation's . . . books and records . . . ."[9]

The original statutory inspection right was restricted to stockholders of record.[10] After section 220's enactment in 1967, "stockholders of record" were the only persons entitled to inspect the books and records of a corporation for over thirty-five years.[11] In 2003, section 220 was amended to extend inspection rights to beneficial owners.[12] In its present form, section 220(b) imposes the following demand requirements upon beneficial stockholders seeking to inspect books and records:

> In every instance where the stockholder is other than a record holder of stock in a stock corporation, . . . the demand under oath shall [1] state the person's status as a stockholder, [2] be accompanied by documentary evidence of beneficial ownership of the stock, and [3] state that such documentary evidence is a true and correct copy of what it purports to be.[13]

These three requirements are an "important element of the statutory scheme" that

---

6. *See, e.g., Graulich v. Dell Inc.*, 2011 WL 1843813, at *3 (Del.Ch. May 16, 2011) (describing a plaintiff, whose demand had originally omitted the documentary evidence of beneficial ownership, sending an amended demand containing such evidence).

7. *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 116 (Del.2002) (citing *Shaw v. Agri–Mark, Inc.*, 663 A.2d 464, 466 (Del.1995)).

8. *Id.* (citing *Shaw v. Agri–Mark, Inc.*, 663 A.2d at 467).

9. Del.Code Ann. tit. 8, § 220(b) (2011).

10. *Shaw v. Agri–Mark, Inc.*, 663 A.2d at 467 (citing § 29 of the General Corporation Law of 1901, 22 Del. Laws c. 167; *Bay State Gas Co. v. State ex rel. Content*, 56 A. 1114 (Del. 1904)); 1 Edward P. Welch et al., *Folk on Delaware General Corporation Law* § 220.2 (5th ed. 2010 Supp.).

11. *Shaw v. Agri–Mark, Inc.*, 663 A.2d at 468.

12. 74 Del. Laws ch. 84, §§ 5–8 (2003).

13. Del.Code Ann. tit. 8, § 220(b).

extended inspection rights to beneficial owners.[14] Indeed, they "protect[ ] corporations from improper demands by requiring that evidence of beneficial ownership be both furnished with the demand and provided under oath." [15]

The first and third statutory requirements are not at issue here. It is undisputed, however, that Central Laborers Inspection Demand failed to satisfy the second statutory procedural requirement.

### Section 220's Balance

"Delaware law allows a stockholder a statutory right to inspect the books and records of a corporation so long as certain formal requirements are met, and the inspection is for a proper purpose." [16] Section 220(c) provides that stockholders seeking to inspect the corporation's books and records *"shall first establish* that: (1) [s]uch stockholder is a stockholder; (2) [s]uch stockholder has *complied with [section 220] respecting the form and manner of making demand for inspection of such documents;* and (3) [t]he inspection such stockholder seeks is for a proper purpose." [17] This statutory language makes it clear that a stockholder must comply with the "form and manner" of making the demand *before* the corporation determines whether the inspection request is for a proper purpose.[18] Absent such procedural compliance, the stockholder has not properly invoked the statutory right to seek inspection, and consequently, the corporation has no obligation to respond.

The requirement that the corporation receive an inspection demand in proper form recognizes the importance of striking an appropriate balance between the rights of stockholders and corporations. In *Seinfeld v. Verizon Communications,* this Court observed the long-standing principle that a stockholder's right to obtain information based upon credible allegations of corporation mismanagement must be balanced against the rights of directors to manage the business of the corporation without undue interference from stockholders.[19] Reaffirming our prior holdings in *Security First Corp. v. U.S. Die Casting & Development Co.*[20] and *Thomas & Betts Corp. v. Leviton Manufacturing Co.,*[21] this Court held that stockholders have a right to inspect books and records when they have established some "credible basis" to believe that there has been wrongdoing.[22] We concluded that such a standard achieves an "appropriate balance between providing stockholders who can offer some

14. *Seinfeld v. Verizon Commc'ns Inc.,* 873 A.2d 316, 318 (Del.Ch. Jan. 21, 2005). *See also Smith v. Horizon Lines, Inc.,* 2009 WL 2913887, at *2 (Del.Ch. Aug. 31, 2009) ("The purpose of § 220 is not served if the shareholder supplies a document that does not actually evidence that [the shareholder] is the beneficial owner of the company's stock on the relevant date."); *id.* ("[t]he demand letter sent by plaintiff to Horizon fails to comply with this statutory mandate because it was not accompanied by documentary evidence of beneficial ownership.").

15. *Seinfeld v. Verizon Commc'ns Inc.,* 873 A.2d at 317.

16. *Kaufman v. CA, Inc.,* 905 A.2d 749, 753 (Del.Ch.2006) (citations omitted).

17. Del.Code Ann. tit. 8, § 220(c) (emphasis added).

18. *Id.*

19. *Seinfeld v. Verizon Commc'ns, Inc.,* 909 A.2d 117, 118, 122 (Del.2006).

20. *Sec. First Corp. v. U.S. Die Casting & Dev. Co.,* 687 A.2d 563 (Del.1997).

21. *Thomas & Betts Corp. v. Leviton Mfg. Co.,* 681 A.2d 1026 (Del.1996).

22. *Seinfeld v. Verizon Commc'ns, Inc.,* 909 A.2d at 122–25.

evidence of possible wrongdoing with access to corporate records and safeguarding the right of the corporation to deny requests for inspections that are based only upon suspicion or curiosity."[23]

Section 220's requirement that stockholders seeking document inspection first comply with the "form and manner" of making a demand to inspect the corporation's records, achieves the same appropriate balance between the interests of the stockholders and the corporation. The requirements in section 220 protect "corporations from improper demands by requiring that *evidence of beneficial ownership be both furnished with the demand and provided under oath.*"[24] Accordingly, Delaware courts require strict adherence to the section 220 inspection demand procedural requirements.[25]

### *Statute Not Followed*

■ In this case, Central Laborers' Inspection Demand did not comply with the procedural requirements in section 220(b).[26] Indeed, it contained several errors. First, the Inspection Demand identified the wrong corporation, stating that it seeks "to inspect and copy the . . . books and records of *Viacom* and its subsidiaries," rather than that of *News Corp.*[27] Second, the supporting materials filed in support of the Inspection Demand were inconsistent. The affidavit of Dan Koeppel, Central Laborers' Executive Director (the "Koeppel Affidavit"), asserted that Central Laborers' *beneficially* owned 14,110 shares of News Corp. However, the Power of Attorney signed by Koeppel characterized Central Laborers as the *record* owner of the same 14,110 News Corp. shares. Third, evidence of Central Laborers' beneficial ownership of News Corp.'s stock was not included with the Inspection Demand.[28] The Koeppel Affidavit stated that "Central Laborers beneficially owned and held 14,110 shares of News Corporation common stock, *as shown by the annexed document* which is a true and correct copy of the original record."[29] However, no documents were annexed to the Koeppel Affidavit.

In the Court of Chancery, Central Laborers' attorney acknowledged that no documentary evidence of Central Labor-

---

**23.** *Id.* at 118.

**24.** *Seinfeld v. Verizon Commc'ns, Inc.*, 873 A.2d at 317 (emphasis added).

**25.** *White v. Panic*, 783 A.2d 543, 550 n. 15 (Del.2001) ("[A] stockholder who has met the procedural requirements and has shown a specific proper purpose may use the summary procedure embodied in 8 *Del. C.* § 220 to investigate the possibility of corporate wrongdoing." (quoting *Rales v. Blasband*, 634 A.2d 927, 930 n. 10 (Del.1993))); *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d at 566–67 ("Section 220 of the Delaware General Corporation Law permits a stockholder, who shows a specific proper purpose and who complies with the procedural requirements of the statute, to inspect specific books and records of a corporation."); *Kaufman v. CA, Inc.*, 905 A.2d at 753 ("Delaware law allows a stockholder a statutory right to inspect the books and records of a corporation so long as certain formal requirements are met, and the inspection is for a proper purpose."); *Seinfeld v. Verizon Commc'ns, Inc.*, 873 A.2d at 317 ("[Section 220] is both clear and commanding. Compliance with it is not difficult, and it is not too much to ask of a stockholder or his lawyers to read the statute and comply with its plain provisions when making a demand.").

**26.** Del.Code Ann. tit. 8, § 220(b).

**27.** Emphasis added.

**28.** *Seinfeld v. Verizon Commc'ns, Inc.*, 873 A.2d at 317 (noting that section 220 requires "evidence of beneficial ownership be both furnished with the demand and provided under oath").

**29.** Emphasis added.

ers' stock ownership in News Corporation had been included with the Inspection Demand and characterized it as a "clerical error." Nevertheless, Central Laborers contends, it has satisfied the procedural requirements of section 220 by submitting an account statement evidencing its beneficial ownership in News Corp. stock and a revised Koeppel Affidavit, together with its brief in opposition to News Corp.'s motion to dismiss. That contention is without merit.

Strict adherence to the section 220 procedural requirements for making an inspection demand protects "the right of the corporation to receive and consider a demand in *proper form before litigation is initiated.*[30] That right of the corporation is defeated and an integral part of the statute rendered nugatory when ... the demand does not satisfy the statutory mandate and an effort to comply with the requirements of form is made during the course of the litigation without delivering a new form of demand."[31]

In *Mattes v. Checkers Drive–In Restaurants, Inc.,*[32] as in this case, the stockholder plaintiff submitted a defective inspection demand. After suing on his defective demand, the plaintiff "submitted an affidavit in the litigation verifying the demand and confirming that the lawyer who made the demand was acting as his authorized attorney."[33] There, as here, the plaintiff "did not make a new demand conforming to the statute and [then] sue on it."[34] The Court of Chancery refused to accept the plaintiff's demand because "the express statutory requirements of § 220 as to the form of a stockholder demand should be strictly followed."[35] The *ratio decidendi* of *Mattes* applies with equal force in this case.

Central Laborers' submission of the account statement as part of its filing in the 220 Action did not effectively cure the statutory defect in the Inspection Demand. Section 220(b) provides that "the demand under oath *shall ... be accompanied by* documentary evidence of beneficial ownership of the stock" and *"shall be directed to the corporation at its registered office ... or at its principal place of business."*[36] That was not done in this case. Central Laborers furnished the account statement in its response to News Corp.'s motion to dismiss. The statute requires the documentary evidence to accompany the demand for inspection. Therefore, Central Laborers' subsequent filing would comply with the statute only if it was submitted with either a new or an amended demand, directed at News Corp.'s registered office or principal place of business.[37] That was not done here. Accordingly, Central La-

---

**30.** *Mattes v. Checkers Drive–In Rests., Inc.,* 2000 WL 1800126, at *1 (Del.Ch. Nov. 15, 2000) (emphasis added).

**31.** *Id.*

**32.** *Mattes v. Checkers Drive–In Rests., Inc.,* 2000 WL 1800126 (Del.Ch. Nov. 15, 2000).

**33.** *Id.* at *1.

**34.** *Id.*

**35.** *Id.*

**36.** Del.Code Ann. tit. 8, § 220(b) (emphasis added).

**37.** *See, e.g., Smith v. Horizon Lines Inc.,* 2009 WL 2913887, at *2–3 (finding plaintiff did not attach proper documentary evidence of his beneficial ownership of stock and exercising discretion to grant plaintiff additional time to file a new demand before dismissing complaint); *Mattes v. Checkers Drive–In Rests., Inc.,* 2000 WL 1800126, at *2 (dismissing section 220 action with prejudice unless plaintiff has first moved for leave to further amend his complaint to allege the corporation's failure to comply with a demand made in proper form).

borers' was unsuccessful in its attempt to rectify the defect in its Inspection Demand.

### *Conclusion*

Section 220 permits a stockholder to inspect books and records of a corporation if the stockholder complies with the procedural requirements of the statute and then shows a proper purpose for the inspection.[38] Section 220 requires a stockholder seeking to inspect books and records to first establish that such stockholder has complied with the form and manner of making demand for inspection of such documents.[39] Central Laborers has not made that showing. Because Central Laborers' Inspection Demand did not satisfy the procedural requirements of section 220, it did not establish its standing to inspect the books and records of News Corp. On that basis alone, and without reaching the issue of proper purpose, the judgment of the Court of Chancery is affirmed.

---

**38.** *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d at 566–67.

**39.** Del.Code Ann. tit. 8, § 220(c)(2); *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d at 566–67; *Rales v. Blasband*, 634 A.2d 927, 932 n. 10 (Del.1993).