# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ALFREDO J. MARTINEZ and HIGHTOWER ADVISORS, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 2019-1005-SG ) |
| GPB CAPITAL HOLDINGS, LLC, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Date Submitted: June 4, 2020
Date Decided: June 9, 2020

Stephen L. Caponi and Matthew B. Goeller, of K&L GATES LLP, Wilmington, Delaware, *Attorneys for Plaintiffs Alfredo J. Martinez and HighTower Advisors, LLC*.

Patrica L. Enerio and Elizabeth A. DeFelice, of HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware, *Attorneys for Defendant GPB Capital, LLC*.

GLASSCOCK, Vice Chancellor

This Action seeks books and records from Defendant GPB Capital, LLC ("GPB"), the general partner of four limited partnerships used for private equity investments: GPB Automotive Portfolio, LP ("Automotive"); GPB Holdings I, LP ("Holdings I"); GPB Holdings II, LP ("Holdings II"); and GPB/Armada Waste Management, LP ("Waste," and, together with Automotive, Holdings I, and Holdings II, the "GPB Funds"). One Plaintiff, Alfredo J. Martinez ("Martinez") is a limited partner of Holdings II; the other Plaintiff, HighTower Advisors, LLC ("HighTower") seeks books and records as "agent" of other limited partners of the GPB Funds. HighTower is the investment advisor who facilitated the sale of some of the partnership interests of the GPB Funds. The Plaintiffs seek books and records on two grounds: one statutory (via 6 *Del. C.* § 17-305) and one contractual (based on an "Agreement of Limited Partnership" of each GPB Fund).

Statutory books and records actions are summary in nature, and closely cabined by the statute. They require the member, limited partner, or stockholder (as applicable) to follow strict form and manner requirements, at which point the entity must respond, quickly as well as appropriately. Otherwise, the interest holder may seek summary relief, which this Court will supply, if warranted, on an expedited basis, usually following limited discovery and trial on a paper record. By contrast, the pace of quotidian plenary actions allows for a comparatively relaxed procedure of discovery, motion practice, and trial. As a result, a combined plenary and

1

summary action together tend to make an unworkable hybrid, a chimera that would threaten to "overwhelm the purpose of the [summary] special proceeding."[1] Accordingly, statutory books and records actions are, generally speaking, limited to that relief only.

The Plaintiffs' complaint here seeks relief via such a hybrid: the Plaintiffs seek both statutory summary relief and specific performance of a contract. Typically, I would dismiss the plenary contract claims *sua sponte*, with leave to refile as a separate action. Here, however, GPB has moved for a Judgement on the Pleadings. Because consideration of that Motion makes clear that the Motion must be granted with respect to both Plaintiffs' summary books and records action, but denied with respect to Martinez's contract action, in the interest of litigants' economy it is appropriate that this matter proceed solely as a plenary action for specific performance.

HighTower, I find, lacks standing to pursue the statutory action (because it is not a limited partner of any of the GPB Funds) and the contract action (because it is neither a party to nor third-party beneficiary of the GPB Funds' Agreement[s] of Limited Partnership). Martinez is a limited partner of only Holdings II; with respect to Holdings II, he has standing to pursue books and records on both grounds. Because he failed to comply with the form and manner requirements of the statute,

---

[1] *Gotham Partners, L.P. v. Hallwood Realty Partners*, 714 A.2d 96, 99 (Del. Ch. 1998).

2

however, he cannot proceed under § 17-305. But Martinez has pled an entitlement to specific performance sufficient to survive GPB's Motion for Judgement on the Pleadings on his contractual claim. Accordingly, GPB is entitled to a judgement in its favor on the statutory claims, and, with respect to HighTower, on the contract claims as well. The Defendant's Motion is denied with respect to Martinez's contractual claim. My rationale follows.

## I. BACKGROUND[2]

### A. The Parties

Defendant GPB is a Delaware limited liability company with its principal place of business in New York, New York.[3] GPB is the general partner the GPB Funds.[4] The GPB Funds are four actively managed private equity vehicles that invest in a variety of underlying assets, including automotive dealerships, waste management companies, health services facilities, energy companies, private debt, and information technology companies.[5]

---

[2] The facts, except where otherwise noted, are drawn from the well-pled allegations of the Plaintiffs' Complaint to Compel Inspection of Books and Records, D.I. 1 (the "Complaint" or "Compl."), and exhibits or documents incorporated therein, which are presumed true for the purposes of GPB's Motion for Judgment on the Pleadings.

[3] Compl., ¶ 10.

[4] *Id.*

[5] *Id.* ¶ 12.

Plaintiff HighTower serves as the investment advisor to various clients who purchased limited partnership interests in the GPB Funds.[6] The clients first purchased and have continuously held these investments since prior to April 2018.[7]

Plaintiff Martinez is a Managing Director at HighTower in Boca Raton, Florida.[8] Martinez has held an interest in Holdings II continuously since May 5, 2017.[9]

*B. The Demands*

On January 10, 2019, HighTower sent a demand for information from GPB regarding GPB's failure to timely file financial information, failure to respond to certain data requests, and investor communications relating to underperformance, impairment recognition, and distribution charges (the "First Demand").[10] The First Demand was sent by HighTower "on behalf of its clients who beneficially own shares" of the GPB Funds and to whom HighTower serves as an investment advisor.[11] The names of the "clients," and any description of their ownership

---

[6] *Id.* ¶ 9.
[7] *Id.*
[8] *Id.* ¶ 8.
[9] *Id.*
[10] *Id.* ¶ 30; *see* Compl., Ex. C ("First Demand"). The Complaint pleads that the date of the First Demand was January 4, 2019, but the First Demand, attached as an exhibit to the Complaint, is dated January 10, 2019. First Demand, at 1.
[11] First Demand, at 1. I note that, as limited partnerships, the GPB Funds do not have "shares" but "partnership interests." *See* 6 *Del. C.* § 17-101(15) ("'Partnership interest' means a partner's share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets.").

4

interests in the GPB Funds was lacking.[12]  GPB responded to the First Demand via an email from GPB's Managing Director and Chief Compliance Officer on January 18, 2019, in which GPB refused to provide the requested information at that time.[13] Pursuant to ongoing communications between the Plaintiffs and GPB, GPB later provided some information, including certain fair market value reports that were produced under a nondisclosure agreement, but GPB nevertheless failed to provide significant categories of information requested in the First Demand.[14]

On August 21, 2019, the Plaintiffs held a telephone call with David Gentile—GPB's founder—to discuss their outstanding requests for information.[15]  Gentile did not provide answers to many of the Plaintiffs' requests and stated that audited financials for the GPB Funds—which had not been delivered for 2017 and had been delayed numerous times—would not be available until the end of September 2019.[16] That same day, HighTower, "[o]n behalf of its clients and certain HighTower personnel who invested in the GPB Funds alongside its clients," reiterated and

---

[12] *See* First Demand.
[13] Compl., ¶ 31.
[14] *Id.* ¶ 32.
[15] *Id.* ¶¶ 11, 34.
[16] *Id.* ¶¶ 14 ("In April 2018 . . . GPB notified Plaintiffs that the filing of the GPB Funds' 2017 audited financials would be delayed until the third quarter of 2018."), 17 ("In August 2018, GPB alerted all investors that the GPB Funds' 2017 audited financials were still not complete, and that filing of those financials would be delayed until the end of the year."), 19 ("On December 20, 2018, Plaintiffs received an investor letter and participated in an investor call with David Gentile, in which GPB communicated the following issues with respect to the GPB Funds: (a) The GPB Funds' 2017 audited financials would not be complete by the end of 2018[.]"), 34.  Audited financials for 2017 and 2018 have yet to be delivered.  *Id.* ¶ 28.

supplemented its requests from the First Demand and made a demand upon GPB pursuant to 6 *Del. C.* § 17-305 for inspection of books and records seeking to investigate potential breaches of fiduciary duty (the "Second Demand").[17] The Second Demand stated that its purpose in making the demand was to:

> Determine whether GPB's officers and/or directors have properly discharged their fiduciary duties to HighTower's clients, to identify instances of mismanagement or fraudulent activity, to investigate whether GPB has adequately disclosed all significant information to HighTower's clients regarding their investments at all pertinent times before and after selling securities to investors, and to take any appropriate action in the event that wrongdoing is revealed.[18]

As in the First Demand, in the Second Demand HighTower did not identify their "clients" or their membership interests in the GPB Funds.[19] GPB responded to the Second Demand on August 28, 2019, and communicated that the Second Demand was improper because it was not sent directly by the limited partners themselves.[20] GPB also asserted that the Second Demand was brought for the improper purpose of aiding HighTower's defense in pending FINRA arbitrations.[21]

On September 23, 2019, HighTower responded to GPB's August 28, 2019 rejection of the Second Demand via letter.[22] HighTower stated that the Second Demand was proper under Delaware law because HighTower's clients and personnel

---

[17] *Id.* ¶ 35; Compl., Ex. D (the "Second Demand"), at 1.
[18] Second Demand, at 1–2.
[19] *See* Second Demand.
[20] Compl., ¶ 38.
[21] *Id.*
[22] *Id.* ¶ 39; *see* Compl,. Ex. F ("September 23 Letter").

6

who beneficially own partnership interests in the GPB Funds "have authorized HighTower to make the Demand as an agent on their behalf . . . . Please find investor affidavits for each GPB Fund attached to this letter that confirms this circumstance."[23] Four affidavits were attached, one affidavit from an investor in each of Automotive, Holdings I, Holdings II, and Waste.[24] Each affidavit stated: "I hereby authorize HighTower to act as my agent in seeking and inspecting the information and documents described in the August 22, 2019 Demand for Information Pursuant to 6 Del. C. § 17-305 . . . . This authorization shall be retroactive to the date of the [Second] Demand."[25] Plaintiff Martinez submitted one of the affidavits, which stated that he "beneficially own[ed] shares" in Holdings II.[26] GPB replied on October 22, 2019, and refused to comply with the Second Demand, reiterating the same assertions citing the same contentions raised in their August 28, 2019 letter, that is, form and content deficiencies and improper purpose.[27]

---

[23] September 23 Letter, at 1.
[24] Compl., ¶ 39; September 23 Letter.
[25] September 23 Letter. While the affidavits state the Second Demand was sent on August 22, 2019, the Second Demand is dated August 21, 2019. Second Demand, at 1.
[26] September 23 Letter. I presume that Martinez's affidavit intends to convey that Martinez owns membership interests in Holdings II. *See* n.11, *supra*.
[27] Compl., ¶ 40.

7

## C. The Complaint and Procedural History

The Plaintiffs filed their Complaint to Compel Inspection of Books and Records (the "Complaint") on December 16, 2019. The Plaintiffs' purpose in seeking books and records from each of the GPB Funds is to

> [I]nvestigate potential wrongdoing, fraudulent activity, mismanagement and breaches of fiduciary duties by management or the Board or otherwise in connection [with] GPB's delayed filing of financial information and allegations of fraud made in lawsuits filed against GPB, and to take appropriate action in the event that wrongdoing, fraudulent activity, mismanagement or breaches of fiduciary duties are discovered.[28]

The Plaintiffs seek to obtain such books and records via statutory right, and the Complaint states that they "have fulfilled the requirements of Section 17-305 to inspect and copy books and records of [GPB]."[29]

The Complaint additionally pleads that the Plaintiffs are entitled to inspect GPB's books and records under the Agreement of Limited Partnership (each an "Agreement," and together the "Agreements") of each of the GPB Funds.[30] In citing the contractual provision, the Complaint states that Martinez "is entitled to inspect [GPB's] books and records as a limited partner, and Plaintiff HighTower is entitled to inspect as the designee of multiple limited partners."[31]

---

[28] *Id.* ¶¶ 36, 42.
[29] *Id.* ¶ 44.
[30] *Id.* ¶ 45.
[31] *Id.*

GPB moved for judgment on the pleadings on February 6, 2020.[32]  I heard Oral Argument on June 4, 2020, and considered the matter submitted for decision on that date.

## II. ANALYSIS

A motion for judgment on the pleadings under Chancery Court Rule 12(c) may be granted only where no material issue of fact exists and the movant is entitled to judgment as a matter of law.[33]  "When considering a Rule 12(c) motion, the court must assume the truthfulness of all well-pled allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff."[34]

### A. HighTower Lacks Standing to Bring Either the Statutory or Contractual Claims; Martinez Has Standing Only as to Holdings II

Standing "refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or to redress a grievance."[35]  Standing is a threshold issue, and must be considered before substantive consideration of a claim.[36]  The standing requirement supports judicial and litigants' economy; more importantly, it ensures

---

[32] Def. GPB Capital Holdings, LLC's Mot. for J. on the Pleadings, D.I. 6.

[33] *W. Coast Opportunity Fund, LLC v. Credit Suisse Sec. (USA), LLC,* 12 A.3d 1128, 1131 (Del. 2010); *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[34] *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000).

[35] *Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (citing *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991)).

[36] *Ritchie CT Opps, LLC v. Huizenga Managers Fund, LLC*, 2019 WL 2319284, at *8 (Del. Ch. May 30, 2019).

that litigants are fully motivated to vigorously pursue claims, and helps prevent the mischief of advisory opinions.

Plaintiffs make their statutory claim for GPB's books and records under 6 *Del. C.* § 17-305, pertaining to access to and confidentiality of information of limited partnerships.[37] The Plaintiffs have pled that each of the GPB Funds is a limited partnership, so, as pled, the statute applies here. The inspection right under § 17-305 "belongs to current limited partners," and such limited partners may exercise their inspection right "in person or by attorney or other agent."[38] The statute states:

> If a general partner refuses to permit a limited partner, or attorney or other agent acting for the limited partner, to obtain from the general partner [information that a limited partner may obtain under §17-305(a)] or does not reply to the demand that has been made within 5 business days (or such shorter or longer period of time as is provided for in a partnership agreement but not longer than 30 business days) after the demand has been made, *the limited partner* may apply to the Court of Chancery for an order to compel such disclosure.[39]

"One of the fundamental rules of statutory construction is that the words in a statute must be given their ordinary meaning. If the language is clear and unambiguous, courts may not interpret the statute to mean other than what it says."[40] Section 17-305(e) unambiguously limits the right to apply to this Court for disclosure of a

---

[37] 6 *Del. C.* § 17-305.
[38] *Greenhouse v. Polychain Fund I LP*, 2019 WL 2290245, at *4 (Del. Ch. May 29, 2019); 6 *Del. C.* § 17-305(a).
[39] 6 *Del. C.* § 17-305(e) (emphasis added).
[40] *Ross v. Dep't of Correction*, 697 A.2d 377, 378 (Del. 1997) (citing *Sostre v. Swift*, 603 A.2d 809, 813 (Del. 1992); *In re Swanson*, 623 A.2d 1095, 1096–97 (Del. 1993)).

limited partnership's books and records to "the limited partner." HighTower is *not a limited partner* of any of the GPB Funds. Consequently, HighTower lacks standing to pursue the right of inspection under § 17-305. HighTower's counsel conceded as much at Oral Argument.

The Complaint also seeks GPB's books and records under § 9.4 of each of the Agreements. That Section reads:

> At any time before the Partnership's complete liquidation, each Limited Partner, or a designee thereof, at its own expense may (i) fully examine and audit the Partnership's books, records, accounts and assets, including bank account balances, and (ii) examine, or request that the General Partner furnish, such additional information as is reasonably necessary to enable the requesting Partner to review the state of the activities of the Partnership . . . .[41]

Limited partnership agreements are contracts.[42] The contractual claim seeks enforcement of a right to books and records. Where one seeks "the actual accomplishment of a contract by the party bound to fulfill it; performance of a contract in the precise terms agreed upon; strict performance," that person seeks specific performance of the contract.[43] That is precisely what the Plaintiffs desire—

---

[41] Compl., Ex. H, § 9.4; Compl., Ex. I, § 9.4; Compl., Ex. J, § 9.4; Compl., Ex. K, § 9.4.

[42] *Madison Real Estate Immobilien-Anlagegesellschaft Beschrankt Haftende Kg v. Kanam USA XIX Ltd. P'ship*, 2008 WL 1913237, at \*11 (Del. Ch. May 1, 2008); *Schuss v. Penfield Partners, L.P.*, 2008 WL 2433842, at \*6 (Del. Ch. June 13, 2008).

[43] *Diamond State Iron Co. v. Todd*, 14 A. 27, 34 (Del. Ch. 1888), *aff'd*, 13 Del. (8 Houst.) 372 (Del. 1889) (internal quotation marks omitted); *see Potter v. Potter*, 251 A.2d 578, 580 (Del. Ch. 1968) ("Specific performance may be defined as the actual accomplishment of a contract by the party bound to fulfil it . . . It is an equitable remedy available in appropriate circumstances to protect rights under contract.").

they request that I order GPB to produce the GPB Funds' books and records in specific performance of § 9.4 of the Agreements.

The Plaintiffs have not pled that HighTower is a party to any of the Agreements. It is settled Delaware law that "strangers to a contract [*i.e.* non-parties] ordinarily acquire no right under it unless it is the intention of the promisee to confer a benefit upon such third party."[44] Thus, in order to obtain specific performance of the Agreements, the Plaintiffs must demonstrate that HighTower has standing to enforce the Agreements as a third-party beneficiary.[45]

In order to demonstrate that HighTower is a third-party beneficiary of the Agreements, the Plaintiffs must plead facts that allow a reasonable inference that:

> (i) the contracting parties intended that the third party beneficiary benefit from the contract, (ii) the benefit was intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party was a material part of the parties' purpose in entering into the contract.[46]

---

[44] *Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 268 (Del. Ch. 1987) (citing 2 *Williston on Contracts* § 356 (1959); 4 *Corbin on Contracts* §§ 772, 774 (1951)); *see Triple C Railcar Serv., Inc. v. City of Wilmington*, 630 A.2d 629, 633 (Del. 1993) ("It is axiomatic that either party to an agreement may enforce its terms for breach thereof. Equally settled is the principle that a third person, who is, in effect, a stranger to the contract, may enforce a contractual promise in his own right and name if the contract has been made for his benefit." (internal citations omitted)).

[45] *Dolan v. Altice USA, Inc.*, 2019 WL 2711280, at *7 (Del. Ch. June 27, 2019) ("Since Plaintiffs were not parties to the Merger Agreement, they must demonstrate they have standing to enforce the contract as third-party beneficiaries.").

[46] *Id.* (citing *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001)).

The Agreements explicitly disclaim third party beneficiaries.[47] Nonetheless, the Plaintiffs contend that HighTower has standing to pursue the contractual claim because § 9.4 of the Agreements states that "each Limited Partner, *or a designee thereof*" may "(i) fully examine and audit the Partnership's books, records, accounts and assets, including bank account balances," and, "(ii) examine, or request that the General Partner furnish, such additional information as is reasonably necessary to enable the requesting Partner to review the state of the activities of the Partnership . . . ."[48] HighTower argues that, as a designee, this language provides it with an inspection right. But the Plaintiffs fail to plead *any of the three elements* required to demonstrate third-party beneficiary status. Moreover, contrary to what the Plaintiffs contend, granting the right of a limited partner to nominate a designee to "examine and audit" the books and records and "examine, or request" additional information *is not* equivalent to conferring upon the designee a right to specifically enforce the contract.

---

[47] Section 13.9 of each of the Agreements, titled "No Third Party Beneficiary," reads: "This Agreement is made solely and specifically among and for the benefit of the parties hereto, and their respective successors and assigns (except that the provisions of Section 9.3 will inure to the benefit of each of the Indemnitees, and no other Person) (except to the extent provided in the immediately preceding parenthetical) will have any rights, interest or claims hereunder or be entitled to any benefits under or on account of this Agreement as a third-party beneficiary or otherwise. No third party, including any creditor of the Partnership, will have any right to enforce any contribution of capital or other advance of funds by any Partner." Compl., Ex. H, § 13.9; Compl., Ex. I, § 13.9; Compl., Ex. J, § 13.9; Compl., Ex. K, § 13.9.

[48] Compl., Ex. H, § 9.4 (emphasis added); Compl., Ex. I, § 9.4 (emphasis added); Compl., Ex. J, § 9.4 (emphasis added); Compl., Ex. K, § 9.4 (emphasis added).

Because HighTower is not a party of the Agreements, and because the Plaintiffs have failed to plead that HighTower is a third party beneficiary, HighTower lacks standing to enforce the Agreements.

Martinez seeks to enforce a contractual right to the books and records of only Holdings II, but it is unclear whether Martinez likewise seeks books and records of all of the GPB Funds pursuant to § 17-305. To the extent Martinez seeks to enforce such a right pertaining to Automotive, Holdings I, and Waste, he lacks standing to do so. Like HighTower, Martinez *is not* a limited partner of Automotive, Holdings I, or Waste. Consequently, Martinez has no standing under § 17-305 to pursue books and records of those limited partnerships. However, Martinez does hold a partnership interest in Holdings II. Consequently, Martinez has standing to pursue the statutory and contractual books and records claims for Holdings II.[49]

*B. Martinez's Demand Did Not Strictly Adhere to § 17-305*

GPB challenges whether Martinez has fulfilled the form and manner requirements of § 17-305.[50] Namely, GPB disputes whether Martinez's affidavit, "authoriz[ing] [purportedly retroactively] HighTower to act as [his] agent in seeking

---

[49] GPB does not contest that Martinez has standing to pursue the contractual claim for books and records of Holdings II by virtue of his limited partner status.

[50] *See* 6 *Del. C.* § 17-305(e) ("When a limited partner seeks to obtain the information described in subsection (a) of this section, the limited partner shall first establish: (1) that the limited partner has complied with the provisions of this section respecting the form and manner of making demand for obtaining such information, and (2) that the information the limited partner seeks is reasonably related to the limited partner's interest as a limited partner.").

and inspecting the information and documents described in the [Second Demand]"

comports with § 17-305(d)'s mandate that:

> In every instance where an attorney or other agent shall be the person
> who seeks the right to obtain the information described in subsection
> (a) of [§17-305], the demand *shall be accompanied by* a power of
> attorney or such other writing which authorizes the attorney or other
> agent to so act on behalf of the limited partner.[51]

GPB's contention is that Martinez's later affidavit cannot retroactively apply to the

Second Demand, and, consequently, HighTower did not have written authorization

to act on behalf of Martinez in making the Second Demand. The Plaintiffs do not

contend that the September 23, 2019 letter was itself the statutorily required

demand.[52]

When applying the statutory requirements as to the form of a stockholder

demand under 8 *Del. C.* § 220—the corporate analogue to § 17–305[53]—our law

requires "strict adherence."[54] The intent of this rule is to ensure that the entity can

---

[51] 6 *Del. C.* § 17-305(d) (emphasis added); *see* Compl., Ex. F.

[52] *See* Pls.' Answering Br. in Opp'n to Def.'s Mot. for J. on the Pleadings, D.I 10 ("Pls.' Answ. Br."), at 3–4 ("On August 21, 2019, HighTower reiterated and supplemented the request in its January 10 letter and made a demand for inspection under Section 17-305 (the 'Demand'). . . . HighTower responded on September 23, 2019, in a letter reasserting its proper purpose for inspection and attaching affidavits from the clients noted in the Complaint . . . . These affidavits designated HighTower to act as the limited partners' agent to pursue the Demand.").

[53] *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 714 A.2d 96, 97 (Del. Ch. 1998) ("Section 17-305 grants a limited partner the right to seek access to the partnership's books and records in a summary proceeding analogous to a § 220 hearing allowed a shareholder in a Delaware corporation."); *Bond Purchase, L.L.C. v. Patriot Tax Credit Properties, L.P.*, 746 A.2d 842, 851 (Del. Ch. 1999); *In re Paine Webber Ltd. P'ships*, 1996 WL 535403, at *4 (Del. Ch. Sept. 17, 1996).

[54] *Gay v. Cordon Int'l Corp*, 1978 WL 2491, at *1 (Del. Ch. Mar. 31, 1978) (quoting *Bear, Stearns & Co. v. Pabst Brewing Co.*, 1977 WL 2578, at *2 (Del. Ch. Nov. 25, 1977)) ("While the relief

15

respond appropriately to a valid demand, and avoid thereby the burden of litigation. The rule conserves the entity's resources by ensuring demands include all information that the statute deems necessary for the entity to determine how it must satisfy its statutory duty. The pertinent question here is whether Martinez has strictly adhered to the requirement regarding authorization in writing for HighTower to make a demand on Martinez's behalf. That is, whether Martinez's affidavit attached to HighTower's September 23, 2019 letter can be considered to have "accompanied" the Second Demand, which was sent on August 21, 2019.[55]

This Court confronted the same question in *Mattes v. Checkers Drive-In Restaurants, Inc.*,[56] an action under § 220. In *Mattes*, a demand was made under oath by an attorney purporting to act on behalf of the plaintiff, but was not "accompanied by a power of attorney"—or any writing from the stockholder for that matter.[57] The stockholder sued on the demand, and submitted an affidavit in the litigation verifying the demand and confirming that the attorney who made the

---

provided by s 220 is virtually absolute as to stocklist inspection, case precedents have tended to require strict adherence to the requirements of the statute in the interest of insuring prompt and limited litigation."); *Mattes v. Checkers Drive-In Rests., Inc.*, 2000 WL 1800126, at *1 (Del. Ch. Nov. 15, 2000) ("My decision on this motion is controlled by the general rule that the express statutory requirements of § 220 as to the form of a stockholder demand should be strictly followed.").

[55] GPB also challenges whether the affidavits constitute a "writing which authorizes the attorney or other agent to so act on behalf of the limited partner." *See* 6 *Del. C.* § 17-305(e). I find that they unambiguously do so.

[56] 2000 WL 1800126 (Del. Ch. Nov. 15, 2000).

[57] *Id*. at *1 (internal quotation marks omitted).

16

demand was acting as his authorized attorney—the stockholder did not make a new demand.[58]  This Court noted that its decision was "controlled by the general rule that the express statutory requirements of § 220 as to the form of a stockholder demand should be strictly followed" and dismissed the action because the demand had not been accompanied by a power of attorney, and thus was not in the proper form under the statute.[59]  A distinction between *Mattes* and this case, however, was that the power of attorney in *Mattes* was submitted "during the course of the litigation," whereas Martinez's affidavit here was submitted before this Action was initiated.[60]  Here, there is no dispute that GPB had received both the demand and written authorization before the litigation was initiated, and no effort has been made to comply with the requirements of form during the pendency of this Action.

*Central Laborers Pension Fund v. News Corp.*[61] further illuminates the meaning of "accompanied by."  In that case, our Supreme Court considered another documentary requirement of § 220—the requirement that the demand "be accompanied by documentary evidence of beneficial ownership of the stock, and state that such documentary evidence is a true and correct copy of what it purports to be."[62]  In *Central Laborers*, the documentary evidence was not included with the

---

[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] 45 A.3d 139 (Del. 2012).
[62] 8 *Del. C.* § 220; *Id.* at 145.

17

demand due to a "clerical error," but an account statement—purporting to show the statutorily required documentary evidence of beneficial ownership—was submitted with the plaintiff's brief in opposition to the corporation's motion to dismiss the complaint.[63] *Central Laborers* held that "[t]he statute requires the documentary evidence to accompany the demand for inspection. Therefore, Central Laborers' subsequent filing would comply with the statute *only if it was submitted with either a new or an amended demand*, directed at News Corp.'s registered office or principal place of business."[64]

GPB's Motion requires me to interpret the words "accompanied by" in § 17-305 in light of the rule of strict adherence. My research has uncovered no case where a writing or document that a demand must be "accompanied by" was submitted *before* the action was initiated, but after the demand was submitted, purportedly applying retroactively. "It is well settled that statutory language is to be given its plain meaning and that when a statute is clear and unambiguous there is no need for statutory interpretation."[65] Moreover, our law takes a "straightforward and literal" interpretation of the "form and manner" requirements for a books and records demand.[66]

---

[63] *Cent. Laborers*, 45 A.3d at 146.

[64] *Id*. (emphasis added).

[65] *State v. Skinner*, 632 A.2d 82, 85 (Del. 1993) (citing *Sostre v. Swift*, 603 A.2d 809, 813 (Del. 1992)).

[66] *Smith v. Horizon Lines, Inc.*, 2009 WL 2913887, at *2 (Del. Ch. Aug. 31, 2009).

18

But I need not parse dictionary definitions to reach a result here, and *Central Laborers* is controlling. Specifically, *Central Laborers'* holding that the subsequent filing would comply with the statute "only if it was submitted with either a new or amended demand" makes clear that Martinez has not demonstrated strict adherence with § 17-305's form and manner requirements. This phrase, to my mind, means that a demand that does not fulfil all procedural requirements of the statute *when made* does not and *cannot* comply with the statute, meaning that a defective demand's procedural deficiencies cannot be cured by later submissions. This remains true regardless of whether litigation on the demand has been initiated. *Central Laborers* forecloses the possibility that a plaintiff can sue on a demand that was not in full compliance with the statute *when made*, and, consequently, for a demand to be "accompanied by" a writing or other documentary evidence, such writing must be submitted contemporaneously with the demand.[67]

This comports with the rationale for strict adherence—an entity should not be required to make multiple reviews of a defective demand following serial attempts to remedy such defects. Strict adherence "furthers the interest of insuring prompt

---

[67] I presume that the General Assembly intended "accompanied by" to have a consistent meaning throughout § 220, and thus, though *Central Laborers* dealt with the requirement that a demand be "accompanied by" documentary evidence of beneficial ownership—not the requirement that where an attorney or other agent makes a demand it is "accompanied by" a sufficient writing—its interpretation of "accompanied by" is controlling here. *See* 2A *Sutherland Statutory Construction* § 46:6 (7th ed. 2020) ("Identical words used in different parts of the same statute, or a similar, statute usually have the same meaning.").

and limited litigation" of books and records actions and "protects the right of the corporation to receive and consider a demand in *proper form before litigation is initiated*."[68] This right is "defeated and an integral part of the statute rendered nugatory when, as happened here, the demand does not satisfy the statutory mandate" and an effort to comply with the form and manner requirements is later made without delivering a new demand.[69] As the entity must respond with alacrity to a demand—and plead any objections with specificity—strict adherence ensures that no doubt exists as to the entity's obligations and the timeline upon which they must be fulfilled.[70] Those interests support requiring contemporaneous submission of documentary evidence that must accompany a demand, giving the entity a full and fair opportunity to respond.

There is no dispute that the Second Demand here was submitted on August 21, 2019 and Martinez's writing authorizing HighTower to act on his behalf was not submitted until September 23, 2019. While the affidavit purported to apply

---

[68] *Mattes v. Checkers Drive-In Rests., Inc.*, 2000 WL 1800126, at *1 (Del. Ch. Nov. 15, 2000) (quoting *Bear, Stearns & Co. v. Pabst Brewing Co.*, 1977 WL 2578, at *2 (Del. Ch. Nov. 25, 1977)) (internal quotation marks omitted); *Cent. Laborers*, 45 A.3d at 146 (citing *Mattes*, 2000 WL 1800126, at *1) (emphasis in original).

[69] *Mattes*, 2000 WL 1800126, at *1.

[70] *Id.*; *see* 6 *Del. C.* § 17-305(e) ("If a general partner refuses to permit a limited partner, or attorney or other agent acting for the limited partner, to obtain from the general partner the information described in subsection (a) of this section or *does not reply to the demand that has been made within 5 business days* (or such shorter or longer period of time as is provided for in a partnership agreement but not longer than 30 business days) after the demand has been made, the limited partner may apply to the Court of Chancery for an order to compel such disclosure." (emphasis added)).

retroactively, the statute forecloses such a possibility. Consequently, Martinez has not strictly adhered to § 17-305, and the statutory claim must be dismissed.[71]

### C. Whether GPB Can Withhold Production in Good Faith Requires a Record

In moving to dismiss the contractual claim, GPB has cited a provision of the Agreements, which permits GPB to withhold production of documents from Martinez if GPB "in good faith believes that the disclosure of such [information] to [Martinez] is not in the best interest of the [Holdings II] or could damage [Holdings II] or the conduct of the affairs of [Holdings II] . . . ."[72] At this pleading stage material issues of fact exist as to whether GPB has such a good faith belief. Consequently, GPB is not entitled to judgment on the pleadings regarding Martinez's alleged contractual right to inspection.

---

[71] *See Mattes*, 2000 WL 1800126, at *2 ("In the circumstances, I see no reason to excuse plaintiff's failure to comply with the mandated statutory form. For these reasons, I have today entered the enclosed order of dismissal."); *Smith v. Horizon Lines, Inc.*, 2009 WL 2913887, at *2 (Del. Ch. Aug. 31, 2009) ("As in *Mattes*, I find the requirements of § 220 have not been met, and the complaint should be dismissed."); *Barnes v. Telestone Techs. Corp.*, 2013 WL 3480270, at *2 (Del. Ch. July 10, 2013) ("I have no discretion to overlook the form and manner requirements set by statutory enactment of the General Assembly. On the contrary, the express statutory requirements of § 220 as to the form of a stockholder demand should be strictly followed." (internal citations and quotation marks omitted)). I note that obviously nothing prevents Martinez from making a new demand. I further note that GPB has also argued that the Complaint does not state a proper purpose for the inspection, but given my finding that §17-305's procedural requirements were not met, I need not reach that question here.

[72] Compl,. Ex. I., § 9.5(d)(ii).

*D. This Action Should Proceed as a Plenary Proceeding*

This Action was filed as a summary proceeding under § 17-305.[73]   But contractual claims "properly cannot be brought in a books and records action under 6 Del. C. § 17-305."[74]   As then-Vice Chancellor Steele explained in *Gotham Partners, L.P. v. Hallwood Realty Partners*:[75]

> The discrete inquiry into proper demand and proper reason results in a narrow and focused proceeding.  To allow the limited partner to add complex claims of fiduciary or contractual breach of duty would expand the proceeding into a plenary trial and overwhelm the purpose of the special proceeding granted under § 17–305.  Thus, as a general rule, this Court will not entertain outside claims or collateral issues within a § 17–305 hearing, but will hear only those matters that pertain to the limited partner's demand to inspect the books.[76]

If Martinez's statutory claim had not been dismissed, *supra*, I would have dismissed Martinez's contractual claim under *Gotham Partners*' rationale.  But in the interests of the litigants' economy and in light of the fact that Martinez's contractual claim is all that remains of this Action, this matter should proceed outside of the framework of a summary books and records action.

---

[73] Supplemental Information Sheet, D.I. 1.

[74] *Soleno Inc. v. Magic Sliders, Inc.*, 1999 WL 669369, at *1 (Del. Ch. Aug. 18, 1999) (citing *Gotham Partners, L.P. v. Hallwood Realty Partners*, 714 A.2d 96, 99 (Del. Ch. 1998)).

[75] 714 A.2d 96 (Del. Ch. 1998).

[76] *Id*. at 104.

## III. CONCLUSION

GPB's Motion is for Judgment on the Pleadings is granted in part and denied in part. This matter should proceed as a plenary proceeding. The parties should submit a form of order consistent with this Memorandum Opinion.